(PRIZE.)

## The ARIADNE.—*Goddard* et al. Claimants.

The sailing under the enemy's license constitutes, of itself, an act of illegality, which subjects the property to confiscation, without regard to the object of the voyage or the port of destination.

APPEAL from the circuit court for the district of Pennsylvania.

This vessel, belonging to citizens of the United States, and laden with a cargo of flour also belonging to citizens of the same, was captured on the 15th day of October, 1812, on a voyage from Alexandria to Cadiz, with a license or passport of protection from the British admiral, Sawyer. The vessel and cargo were restored in the district court;

1817.

The
Ariadne.

but on appeal, sentence of condemnation was pronounced by the circuit court, from which sentence an appeal was entered to this court.

Feb. 14th.

Mr. *G. Sullivan*, for the appellants and claimants, offered to read farther proof, taken under the standing rule of the court, (25th rule, Feb. term, 1816.)

Mr. *Woodward*, and Mr. *C. J. Ingersoll*, for the captors, denied the authority of the rule under which the farther proof was taken. They argued that the act of congress did not provide for taking depositions to be used as farther proof in prize causes, except where the course of prize practice authorizes it; that farther proof is never admissible, until the cause is heard on the original evidence.

[Mr. Chief Justice MARSHALL called on the claimant's counsel to show what facts the farther proof tended to establish, and stated, that if the case could be distinguished from the former determinations respecting licenses, a foundation would be laid for the admission of the depositions as farther proof.]

Mr. *Webster*, for the appellants and claimants, contended, that this case could be distinguished from those which had been decided. In the case of the Julia,[a] the court had said, " We hold, that the sailing on a voyage under the license and passport of protection of the enemy, in furtherance of his

a 9 *Cranch*, 181.

.views or interests, constitutes such an act of illegality as subjects the ship and cargo to confiscation as prize of war; and that the facts of the present case afford irrefragable evidence of such an act of illegality." This proposition, as a doctrine of law, would be equally true, leaving out all that it contains relative to a license. A voyage prosecuted in furtherance of the enemy's interests is undoubtedly illegal, and it was on this illegality of the *voyage itself* that the judgment of the court proceeded. The court say they are satisfied from the *facts* that the voyage was illegal. In the case now before the court the captors insist, that the court shall shut out the *facts* connected with the voyage, and go merely on presumption. The Julia cannot be an authority for such a decision. The Aurora[b] was decided expressly on the grounds which had been before stated in the Julia; and carries the doctrine no farther In the case of the Hiram,[c] no evidence was offered on the part of the claimants to repel the presumption arising from the license. That case then only decides, that from the possession of the license the court may presume, until the contrary appears, that the voyage was in furtherance of the enemy's objects.

In all these cases the court seems to have rested its decision on the ground that the voyages, in which the vessels were engaged, were, of themselves, illegal voyages, undertaken and prosecuted for the promotion of the enemy's interests; and that

b 8 *Cranch*, 283.  c 8 *Cranch*, 444.  1 *Wheat.* 440.

this illegality was shown by the facts which the cases disclosed. But it is not understood to have decided, that it would hear no proof to make out the innocence of the voyage, notwithstanding the unfavourable inferences which might be drawn from the possession of the license. In the present case such proof is offered, and the claimants are ready to show that the voyage originated in no intention to further, and from its nature could not further, the objects of the enemy. It was a voyage from Baltimore to Cadiz, with flour, at a time when neither the *British* nor the *Spanish* armies drew supplies from that city. They expect to prove it to have been, in all respects, as innocent as a voyage from Baltimore to Boston, with a similar cargo. Upon this application for permission to give proof, and until the court should hear the proof, the only question will be, whether, in the most innocent voyage which can be imagined, the having such a license is, *per se*, cause of confiscation; and cannot, in any case, by any evidence, admit of explanation or excuse. On this point, the claimant's counsel wish to be heard, unless the court considers itself as having recently solemnly decided the precise question. We will contend, that although the possession of such a license might create a presumption of unlawful trade, yet, like presumptions in other cases, it is capable of being repelled by proof; and that the judgment of the court must rest, after all, on the real nature and object of the voyage, as disclosed by the facts connected with it, and not on the mere terms of the passport. In a case of this sort, the court will

not incline to hold itself bound by former decisions beyond their clear and manifest extent. No case appears to have gone so far as to prevent the court from hearing proof of the lawfulness of the voyage, independent of the license, or to have decided that such proof, when full and satisfactory, should not avoid confiscation.

Mr. *Woodward* and Mr. *Ingersoll*, on the other side, were stopped by the court.

Mr. Justice WASHINGTON delivered the opinion of the court.

The view of the court is, that this case cannot be distinguished from those already decided. It is alleged that the flour was not actually destined to the use of the enemy; but whether any part of it went to his use or not, is immaterial. It is, indeed, possible that Cadiz might have fallen without the aid of these supplies; and therefore, in fact, Great Britain and her ally may have been relieved, by these supplies, from the pressure of the war in that quarter. The court, however, in the cases alluded to, proceeded on a broader ground: all the judges who concurred in those decisions were of opinion, that the mere sailing under an enemy's license, without regard to the object of the voyage, or the port of destination, constituted, of itself, an act of illegality which subjected the property to confiscation. It was an attempt by one individual of a belligerant country to clothe himself with a neutral character

by the license of the other belligerent, and thus to separate himself from the common character of his own country.

Sentence affirmed,