SUBSTITUTES UNITED FOR BETTER
SCHOOLS, etc. et al., Plaintiffs,

v.

Catherine ROHTER, etc. et
al., Defendants.

No. 80 C 501.

United States District Court,
N. D. Illinois, E. D.

May 13, 1980.

Edward T. Stein, Singer & Stein, Chicago, Ill., for plaintiffs.

Michael J. Murray, Board of Education of the City of Chicago, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Substitutes United for Better Schools is an organization of teachers in the Chicago public school system which, among other activities, publishes a newspaper, *Substance.* This organization and its president, George Schmidt, brought this action claiming that defendants have interfered with distribution of the newspaper within the schools. Defendants have moved to strike and dismiss the complaint on the grounds that plaintiffs have failed to exhaust administrative remedies, that they lack standing to challenge the rule restricting distribution of such material, that the case is moot, and that plaintiffs have failed to state a claim upon which relief can be granted. Defendants also challenge the proposed class upon whose behalf this action is purportedly brought, as being overly broad.

Plaintiffs attached to their complaint and their earlier motion for a temporary restraining order copies of the regulations and directives at issue. Section 6–18 of the Board of Education Rules provides in part:

"No circular, subscription list, invitation to or notice of meetings shall be circulated among the teachers, unless the same relates to the Teachers' Pension Fund, or to a national, state or local organization of public school teachers, unless the same have been approved by the General Superintendent of Schools."

At least one interpretation of this rule, in a letter from Bessie Lawrence, deputy superintendent, stated that it precluded circulation of materials published by S.U.B.S. Recently, however, defendants appear to have changed their position, and now concede that plaintiffs have a right to distribute their newspaper as long as they do not charge for it. It was upon this representation that Judge Moran denied plaintiffs' motion for a temporary restraining order, without prejudice to plaintiffs' attempt to seek relief from restrictions upon charging for their literature.

■ The court will first consider defendants' contention that the case should be dismissed for failure to exhaust administrative remedies. The collective bargaining agreement between the Board of Education and the Chicago Teachers Union provides a grievance procedure that was not utilized in this case. Defendants rely upon *Dunham v. Crosby*, 435 F.2d 1177 (1st Cir. 1970), and *Drown v. Portsmouth School District*, 435 F.2d 1182 (1st Cir. 1970), *cert. denied*, 402 U.S. 972, 91 S.Ct. 1659, 29 L.Ed.2d 137 (1971), both of which state in dicta that preliminary resort to school board remedies should normally be required before a § 1983 action can be brought. In contrast, prior resort to contractual remedies was not required in *Gonzalez v. Shanker*, 399 F.Supp. 858 (S.D.N.Y.1975), *aff'd*, 533 F.2d 832 (2d Cir. 1976). The Seventh Circuit has adopted an exhaustion requirement, but only in certain narrowly defined contexts. For instance, this Circuit requires resort to prison grievance procedures before a due process claim for confiscation of small amounts of personal property can be brought. *Secret v. Brierton*, 584 F.2d 823 (7th Cir. 1978). There is no indication that the Seventh Circuit would require exhaustion where, as here, it is claimed that first amendment rights are imminently threatened, and

where it is unlikely that pursuit of the union grievance procedures will yield a different response than the one the school board has already given the plaintiffs. Under such circumstances, an exhaustion requirement should not be imposed. *See Hochman v. Board of Education*, 534 F.2d 1094 (3d Cir. 1976). Plaintiffs need not have filed grievances with the union before bringing this suit.

■■ Defendants contend that plaintiffs do not have standing to attack the regulation restricting circulation of printed material, because it does not restrict their activities. Although this regulation does seem to allow the distribution of material by local organizations of teachers, it may have been interpreted, as noted above, to prohibit circulation of materials published by S.U.B.S. Plaintiffs have standing to challenge this alleged practice whether or not it is in conformity with defendants' own regulations. Further plaintiffs obviously have standing to challenge the practice of refusing to allow them to charge for their newspaper. Because this latter practice continues, it is also obvious that at least some of plaintiffs' claims are not moot. Defendants' contention that any possible abridgment of plaintiffs' first amendment rights has been cured by the decision to allow free distribution assumes that free distribution is all that is protected by the first amendment. This question is not one of mootness or lack of standing, but whether plaintiffs have stated a claim upon which relief can be granted. It is to this question which the court now turns.

■ Both parties discuss the issue whether the public school is a "public forum" for first amendment purposes. Defendants rely on cases holding that courthouses, *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); military posts, *Greer v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976); buses, *Lehman v. Shaker Heights*, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974); and jails, *Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), need not be open to use by persons asserting their right to free expression. Plaintiffs rely on *Spartacus Youth League v. Board of Trustees of the Illinois Industrial University*, 78 C 1224 (N.D. Ill. Apr. 2, 1980), holding that a university's student union building was a public forum. The court need not decide whether the public schools are "public fora" in order to resolve defendants' motion to dismiss. The question is not whether the schools must be open to all those who wish to circulate literature; it is whether plaintiffs, who are teachers in those schools, can constitutionally be deprived of the opportunity to sell their organization's newspaper.

Resolution of this question is governed not by the public forum cases, but by *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), which dealt with the first amendment rights of students and teachers within the schools. "It can hardly be argued," said the Court, "that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Id.* at 506, 89 S.Ct. at 736. Defendants in *Tinker* could not constitutionally prohibit the wearing of armbands in school unless a disruption or interference with school activities could be demonstrated. *Cf. Healy v. James*, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972) (college could not deny recognition to student organization without stronger showing that group would be disruptive); *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (upholding validity of city ordinance prohibiting noisy activity near the schools).

Defendants have implicitly accepted the authority of *Tinker* by acknowledging plaintiffs' right to distribute their newspaper. Having done so, they must, in order to prevail, be able to justify a distinction between distribution without charge and distribution with a charge. Under the rationale of *Tinker*, such a distinction could be made on the ground of disruptiveness. However, defendants have made no showing that it is any more disruptive for plaintiffs' members to ask for 25 cents when they hand out copies of their newspaper than it is for them to hand it out without making this request. It is almost inconceivable that such a showing could be made.

Alternatively, a distinction between selling a newspaper and giving it away might be made on the ground that the former is merely commercial activity that is subject to regulation, while the latter may be protected by the first amendment. It is clear that contents of a newspaper are not unprotected simply because the newspaper is sold. *See New York Times v. Sullivan*, 376 U.S. 254, 266, 84 S.Ct. 710, 718, 11 L.Ed.2d 686 (1964); *Smith v. California*, 361 U.S. 147, 150, 80 S.Ct. 215, 217, 4 L.Ed. 205 (1959); *Spartacus Youth League v. Board of Trustees, supra*, at ———. The question is whether a request for the purchase price of a newspaper is so inextricably bound up with the expressions in the newspaper itself that both are within the first amendment's scope.

This question is answered by the Supreme Court's recent decision in *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). There, the Court struck down an ordinance prohibiting door-to-door solicitation of contributions by charitable organizations that do not use at least 75 percent of their receipts for charitable purposes. In so doing, the Court stated that

charitable appeals for funds . . . involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment. Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease.

*Id.* at 632, 100 S.Ct. at 833–34. In this case, where there is no suggestion that the solicitation of funds is for any other purpose than to help defray the costs of publishing the newspaper, it is even clearer than in *Schaumburg* that "without solicitation the flow of such information and advocacy would likely cease."

The Court in *Schaumburg* also found that the Village ordinance posed a particularly serious first amendment problem because the organizations affected by it were those "whose primary purpose is . . . to gather and disseminate information about and advocate positions on matters of public concern." *Id.* at 635, 100 S.Ct. at 835. Similarly, in this case plaintiffs' primary object is to disseminate their views on issues relevant to public school teachers.

■■ It is important to emphasize what this case does not involve. First, plaintiffs are not outsiders seeking to promote their cause within the school. Second, plaintiffs are not attempting to sell anything other than information itself. In such circumstances, the court cannot accept defendants' argument that prohibiting the sale of plaintiffs' newspaper is merely regulation of commercial activity. The court concludes that no distinction can be drawn between plaintiffs' requesting people to take a copy of a newspaper, and requesting them to buy a copy. Both are protected first amendment activities. While there may be activities that may be legitimately prohibited by the board of education's regulation, it cannot be constitutionally applied to the activities of teachers who, for no commercial purpose and in a non–disruptive manner, sell, within the schools in which they work, a newspaper disseminating the views of an organization to which they belong. Plaintiffs have stated a claim upon which relief may be granted.

■ This rationale for denying defendants' motion to dismiss dictates the ruling on defendants' motion in opposition to class certification. The proposed class includes "persons or organizations who wish to sell or distribute literature within the Chicago public schools or who wish to be or become members of an organization such as S.U.B.S. which works to improve the school system." Such a class would presumably include school–children who wish to sell magazine subscriptions for their own personal profit, as well as persons who are

neither employees nor students but wish to use the public schools as a forum to publish their views. The holding above is not broad enough to cover such groups, and the court declines to decide the issues that would be relevant to determination of their claims without a live controversy before it. The court therefore denies certification to the class as presently proposed, without prejudice to plaintiffs' amending their complaint to more narrowly define the class so as to insure that the questions of law and fact dispositive of the result in this opinion would apply to all of its members.

Accordingly, for the reasons given, defendants' motion to strike and dismiss the complaint is denied. Their motion to deny leave to proceed as a class action is granted.