505 A.2d 1112

Thomas W. Gunderman, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs July 8, 1985, to Judges Mac-Phail, Doyle and Barry, sitting as a panel of three.

*Ronald J. Karasek, Zito, Martino and Karasek,* for petitioner.

*John W. English,* Associate Counsel, with him, *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

Opinion by Judge Barry, March 7, 1986:

Thomas Gunderman (claimant) appeals from a decision of the Unemployment Compensation Board of Review (Board) which reversed the referee and denied him unemployment compensation benefits.

Claimant was employed by Speck Plastics, Inc. (employer) for approximately seven and a half years. His last day of work was August 3, 1983. On December 16, 1982, claimant received a written warning for violation of a rule requiring timely reporting of absences. Between December 16, 1982 and June 21, 1983, claimant violated this rule ten more times, and conse-

quently received a three day suspension from work. On August 2, 1983, claimant and employer attended an unemployment compensation hearing before a referee concerning the three day suspension. Claimant surreptitiously recorded this hearing. Later that day, and again on the following day, claimant played the tape of the hearing for some of his co-workers while on the employer's premises. Although the Board found that the playbacks occurred during breaktimes, it also found that the tape was played with the intention of causing a disturbance among the employees and that such a disturbance did in fact occur. The Board also found that claimant had been fired for three separate reasons: first, because his conduct in surreptitiously making the tape and playing it back constituted a third offense in the three step procedure outlined by the employer's regulations (the first two offenses being violations of the reporting rules), for which dismissal was a proper procedure; second, because the conduct amounted to willful misconduct in itself and was grounds for termination under a general clause of the employer's regulations; and third, because the conduct was illegal, constituting a violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C. S. §§5701-5727.

The claimant first argues that the three step disciplinary procedure was improperly applied in this case because the first two infractions of the work rules related to untimely reporting of absences. As this third alleged violation does not concern that rule, the claimant believes that discharge is improper *even if* the present conduct constituted willful misconduct.

Section V(D) of the employer's employee manual provides that proper discipline "shall consist of up to and including written warning of *any* first infraction, up to and including disciplinary suspension for *any* second infraction, and up to and including discharge

for *any* third infraction.'' (Emphasis added.) For the claimant's argument to have merit, this section would have to provide that the step disciplinary procedure applies to successive violations of the *same* rule; since it does not, the claimant's argument is meritless.

Claimant next argues that the facts as found by the Board do not support the legal conclusion that his actions amounted to willful misconduct. With this argument, we agree.

While the term ''willful misconduct'' is not defined in the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e), numerous decisions have defined it as an act of wanton or willful disregard of the employer's interests or of the employee's duties and obligations to the employer. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973). Furthermore, it is well settled that a deliberate violation of the employer's work rules constitutes willful misconduct. *Id.*

The Board concluded that claimant's conduct constituted a violation of the employer's work rules. None of the specifically enumerated rules cover this conduct. Instead, the Board relied on the general clause of the work rules which states, ''It is understood that other rules, not included herein, but recognized in industry as being necessary for successful operation, likewise apply and are subject to proper disciplinary action.'' Because of the very general nature of this clause, we believe that a dismissal based on it will preclude the granting of benefits *only* where the conduct rises to the level of willful misconduct. The Board concluded claimant's actions constituted willful misconduct based on the factual finding that ''said playbacks were done with the intention to cause

a disturbance concerning said employees and did cause a disturbance.'' (Finding of fact #9, Board's decision, 4/16/84).

In *Luketic v. Unemployment Compensation Board of Review*, 35 Pa. Commonwealth Ct. 361, 386 A.2d 1045 (1978), a claimant was discharged for having a poor attitude and being a disruptive influence. As we stated:

> This Court has previously held that a finding that a claimant had a poor attitude is insufficient in itself to justify a conclusion of willful misconduct. Unemployment Compensation Board of Review v. Dravage, 23 Pa. Commonwealth Ct. 636, 353 A.2d 88 (1976); Unemployment Compensation Board of Review v. Kullen, 21 Pa. Commonwealth Ct. 488, 346 A.2d 926 (1975). As Judge KRAMER stated for the Court in Kullen:

> An employe's poor attitude must be coupled with some specific conduct adverse to his employer's interest, or result in some identifiable detriment to the employer before a conclusion is justified.

> 21 Pa. Commonwealth Ct. at 490, 346 A.2d at 927.

> Similarly, we believe that a finding that a claimant was a disruptive influence alone would be insufficient to justify a conclusion of willful misconduct.

*Luketic* at 365, 386 A.2d at 1047.

The act of playing back the tape to the fellow employees was not adverse to any legitimate interest of the employer because it was played during the *employee's break period*. There was no testimony that the disturbance adversely affected production. Were the recording played during work time the result might be different; suffice it to say that it was not.

The Board also held that the claimant's act of recording the hearing was a violation of the criminal laws of this Commonwealth, specifically the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C. S. §§5701-5726. The Board held that criminal conduct is inconsistent with acceptable standards of behavior which an employer has the right to expect. Were the claimant's conduct criminal in nature, we could agree with the Board. Such a characterization is improper.

The Wiretapping Act provides that a person is guilty of a felony of the third degree if, *inter alia*, that person intercepts or discloses an oral communication. 18 Pa. C. S. §5703. An "oral communication" is defined as "[a]ny oral communications uttered by a person *possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation.*" 18 Pa. C. S. §5702 (emphasis added). Here, the communication intercepted was testimony given at a hearing before the referee. As a record of such testimony is taken as a matter of course so that a record can be made for purposes of review by the Board and the courts, no legitimate expectation of privacy existed. Therefore, the act of recording the hearing did not violate the Wiretapping Act.

As the record in this case contains no facts which would support a legal conclusion of willful misconduct, we believe the order of the Board must be reversed and benefits must be awarded.

ORDER

Now, March 7, 1986, the April 16, 1984, order of the Unemployment Compensation Board of Review at No. B-229317, is reversed.

DISSENTING OPINION BY JUDGE DOYLE:

I must respectfully dissent.

I believe *Luketic* is distinguishable from the instant case. The Court in *Luketic* found that the claimant therein had not engaged in any specific conduct which was adverse to her employer's interest. The referee found that claimant was discharged because of her "prior disruptive influence and negative attitude and also because of her actions at the staff meeting where she openly accused the employer of being less than honest with the staff." 35 Pa. Commonwealth Ct. 361, 365, 386 A.2d 1045, 1047 (1978). This Court stated however, that "in the unusual circumstances of this case, we believe that her [actions at the staff meeting] were reasonable in light of her recent experiences concerning the attempted layoff two weeks before." *Id.* at 366, 386 A.2d at 1048.

In the instant case, I believe that Claimant's behavior of *surreptitiously* recording the hearing and playing it back, with, as the Board correctly found, the intent and result of causing a disturbance among the employees, was *not* reasonable, and therefore constituted at least the "negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interest or the employee's duties and obligations," which this Court has previously required for a conclusion of willful misconduct. *See Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 97, 309 A.2d 165, 168-69 (1973).

In addition, it is totally unnecessary for this Court to reach the issue of whether or not Claimant's act of recording the hearing was a violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C. S. §§5701-5727. But even if we were, I am far from convinced that under the circum-

stances of this case, where Claimant did not deny that he *actively concealed* his act of recording the hearing, that Employer had no legitimate expectation of privacy. There is a distinction between the official recording of public proceedings and the private recording for personal use, even by a party in the case. I believe the Court sets a dangerous precedent by holding to the contrary. What with the common knowledge and technical ability to edit and "doctor" tapes that exists today, parties in attendance at a referee's hearing are justified in an expectation that their discussions and testimony are not being secretly recorded.