542 A.2d 185

R. A. Smith, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania State Horse Racing Commission, Respondent.

Submitted on briefs January 27, 1988, to Judges CRAIG and MACPHAIL, and Senior Judge BLATT, sitting as a panel of three.

*Bruce E. Cooper,* for petitioner.

*John Wm. Schreck,* with him, *John B. Hannum, Jr.,* for respondent.

OPINION BY JUDGE CRAIG, May 4, 1988:

R.A. Smith earlier appealed from a decision of the Pennsylvania State Horse Racing Commission revoking his jockey's license. Smith's appellate brief presented three claims: 1) that the defense of entrapment should apply to administrative proceedings that are of a punitive nature; 2) that the conduct of the special agents of the Attorney General's office constituted entrapment; and 3) that the special agents failed to comply with provisions of the Wiretapping and Electronic Surveillance Control Act.[1]

This court, concluding that the defense of entrapment is available in an administrative disciplinary hearing at which a licensee's ability to practice a profession is at stake, and that the conduct of investigators of the attorney general's constituted entrapment, reversed the decision of the racing commission. *Smith v. Pennsylvania State Horse Racing Commission,* 92 Pa. Commonwealth Ct. 472, 501 A.2d 303 (1985).

---

[1] 18 Pa. C. S. §§5701-5726.

Because we reversed the commission solely on the basis of the entrapment issue, we did not address Smith's assertion that the special agents of the Attorney General's office violated the Wiretapping and Electronic Surveillance Control Act.

The Pennsylvania Supreme Court allowed an appeal and reversed, stating that, although "instances may arise where a defense like 'entrapment' may be properly afforded in the administrative context, we do not view the matter before us as such a case." *Smith v. Pennsylvania Horse Racing Commission,* 517 Pa. 233, 239, 535 A.2d 596, 599 (1988). Accordingly, the Supreme Court remanded this case for our consideration of Smith's assertion that the special agents violated provisions of the Wiretapping and Electronic Surveillance Control Act when intercepting oral communication between the agents and Smith.

Because we conclude that there was no violation of the wiretap law, we must affirm the commission's decision.

Our scope of review requires us to affirm an adjudication of the racing commission unless that adjudication did not conform with law or procedure or if the findings of facts are not supported by substantial evidence. *McKenna v. Pennsylvania Horse Racing Commission,* 83 Pa. Commonwealth Ct. 116, 476 A.2d 505 (1984).

The facts as found by the commission[2] were summarized by the Supreme Court as follows:

> Early in 1984, Smith met another jockey, one Vergara, who was unknowingly acting as an agent of investigators from the Attorney General's office. Vergara was participating in a scheme to entice other jockeys to agree to fix a race at

---

[2] The commission's findings 4-15 are contained in this court's previous opinion at 92 Pa. Commonwealth Ct. at 476-78, 501 A.2d at 305.

some time in the future. In return for his agreement, each jockey received $500. Vergara received $100 per jockey for every jockey he enlisted.

Vergara asked Smith whether he would be interested in 'doing business,' and, on February 24, 1984, the two men went to a store in the vicinity of the Penn National Race Course to make a phone call in furtherance of this 'business.' Upon arriving at the store, Vergara spotted the agents from the Attorney General's office. Vergara advised Smith that the agents were 'bad people' and that Smith could 'help him out' if Smith joined Vergara in the agents' car and went along with whatever these bad people were proposing. Smith did so. He entered the car, talked about the plans to fix races, and accepted $500 in cash. Once out of the car, Smith and Vergara went to a bar where Smith attempted to give Vergara the $500. Vergara convinced Smith to keep the money saying that Smith had 'helped him out of a tight spot' and that Smith might not ever be called concerning a race.

517 Pa. at 235-36, 535 A.2d at 597.

The commission also made the following findings regarding the interception:

16. The conversation between the parties was taped by means of a "body microphone" strapped to one of the agents.

17. In addition, the meeting between the parties was videotaped from across the road.

18. The evidence of the taping authority, as contained in certain letters from the Attorney General's Office, and certain affidavits, is included in this record.

19. The full tape of the conversation between the agents and the Appellant, includes the text of a conver-

sation between the agents and the jockey that brought the Appellant to the meeting, after the Appellant had left the car.

20. The Appellant was served a revocation notice on September 5, 1984.

21. The Appellant appealed from this revocation notice, and that appeal resulted in the instant hearing.

22. At the hearing, it was stipulated by the parties that a transcript would be made of the tapes that were offered in evidence, and that transcript would be accepted in lieu of the physical tapes.

On appeal, Smith asserts that the Attorney General's office authorized the interception pursuant to 18 Pa. C. S. §5702(2)(ii),[3] and therefore, that the special agents were subject to the recording and record keeping re-

---

[3] 18 Pa. C. S. §5704(2)(ii) provides:

It shall not be unlawful under this chapter for:

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:

. . .

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom.

quirements of 18 Pa. C. S. §5714(a).[4] Smith further asserts that the special agents failed to comply with these requirements, thereby rendering the interception an unlawful one. Therefore, Smith argues, the tapes should not have been admitted into evidence before the commission.

Section 5721 of the wiretap law contains the following provision:

(a) **Motion to suppress.**—Any aggrieved person in any trial, hearing, or other adversary proceeding in or before any court or other authority of this Commonwealth may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on any of the following grounds:

(1) The communication was unlawfully intercepted.

(2) The order of authorization if required is insufficient on its face.

(3) The interception unless made in accordance with section 5704 (relating to exceptions

---

[4] 18 Pa. C. S. §5714(a) provides:

(a) **Recording and monitoring.**—Any wire or oral communication intercepted in accordance with this chapter shall, if practicable, be recorded by tape or other comparable method. The recording shall be done in such a way as will protect it from editing or other alteration. Whenever an interception is being monitored, the monitor shall be an investigative or law enforcement officer certified under section 5724 (relating to training), and where practicable, keep a signed, written record which shall include the following:

(1) The date and hours of surveillance.

(2) The time and duration of each intercepted communication.

(3) The participant, if known, in each intercepted conversation.

(4) A summary of the content of each intercepted communication. . . .

to prohibition on interception and disclosure of communications) was not made in conformity with the order of authorization or in accordance with the requirements of section 5712 (relating to issuance of order and effect).

18 Pa. C. S. §5721.

Despite the specific statutory language allowing a motion to suppress the interception product, no such motion appears on the record. No motion to suppress appeared in the Petition for Formal Hearing and Request for Supersedeas, filed on September 13, 1984, despite the fact that the commission had informed Smith of the oral communication interception on September 5, 1984. At the hearing, however, Smith's counsel objected to the introduction of the audio tape into evidence. Accordingly, we will consider his assertions regarding the interception as preserved for review.

We conclude, however, that Smith's assertions are without merit. The commission found that the interception of the communication occurred pursuant to 18 Pa. C. S. §5704(2)(i), rather than 18 Pa. C. S. §5704(2)(ii) as Smith contends. Section 5704(2)(i) of the Wiretapping and Electronic Surveillance Control Act provides:

It shall not be unlawful under this chapter for:

. . . .

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where:

(i) such officer or person is a party to the communication.

The special agent wearing the wire was introduced to Mr. Smith and the other jockey, and was in the car at the time the intercepted conversation took place. Therefore, the commission properly concluded that the

special agent was a party to the conversation and thus that the interception occurred in accordance with Section 5704(2)(i).

Section 5702(2)(i), unlike section 5704(2)(ii), does not *require* compliance with the record keeping requirements of 5714(a). Moreover, because this oral interception occurred on a one-time basis and did not constitute a monitored interception, none of the requirements of section 5714 were applicable.

Recently, in *Commonwealth v. Phillips,* Pa. Superior Ct. , 540 A.2d 933 (1586 Pittsburgh 1988, filed February 22, 1988) an oral interception was made, pursuant to section 5704(2)(ii), in the defendant's automobile. The defendant argued that Article I, section 8 of the Pennsylvania Constitution required that a warrant be obtained. The court rejected that argument and held that the warrant requirement laid down in *Commonwealth v. Schaeffer,* 370 Pa. Superior Ct. 179, 536 A.2d 354 (1987), is limited to those instances where the oral interception occurs in a private home.

Moreover, in this case, the oral interception occurred pursuant to section *5704(2)(i),* as well as in the special agent's automobile; therefore, a warrant was not required.

Therefore, the commission properly admitted the oral interception into evidence.

Accordingly, the final order must be an affirmance.

## ORDER

Now, May 4, 1988, the order of the Pennsylvania Horse Racing Commission at No. 84-051, dated November 8, 1984, is affirmed.