670 A.2d 697

**COMMONWEALTH of Pennsylvania**

v.

**Donald L. McIVOR, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1995.

Filed Jan. 22, 1996.

Robert J. Donatoni, West Chester, for appellant.

Joseph W. Carroll, Assistant District Attorney, West Chester, for Com.

Before ROWLEY, President Judge, and CAVANAUGH, BECK, TAMILIA, KELLY, JOHNSON, HUDOCK, FORD ELLIOTT and SAYLOR, JJ.

FORD ELLIOTT, Judge:

Appellant comes before us challenging the denial of his Petition for Writ of Habeas Corpus entered October 6, 1994. Although the trial court entered an amended order November 7, 1994, declining to certify this matter for interlocutory appeal, we granted appellant's petition for interlocutory appeal by order of March 24, 1995.

Appellant was charged with three violations of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. § 5701 *et seq.* ("the Wiretap Act"). In particular, the charges against appellant were brought pursuant to 18 Pa.C.S.A. § 5703(1):

**§ 5703. Interception, disclosure or use of wire, electronic or oral communications**

Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:

(1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;

. . . .

Appellant's Petition for Writ of Habeas Corpus essentially alleged that the Commonwealth failed to establish a *prima facie* case against appellant at the preliminary hearing.

The charges against appellant arose out of the performance of his job as a police officer for the Borough of Oxford, Pennsylvania. It was apparently appellant's practice to secretly tape-record his conversations with motorists during routine traffic stops. Testimony was adduced from three individuals whose conversations were recorded by appellant. Two motorists were stopped for speeding while the third was pulled over for a muffler violation. They testified that they were unaware they were being recorded and none gave consent. The motorists did state that only matters pertaining to their particular traffic stop were discussed. Further, these motorists did not consider these conversations to be confidential. Finally, a detective for Chester County testified that he conducted a consent search of appellant's locker at the Oxford police department and found a voice operated tape recorder, a microphone wire with lapel clip, and various cassette tapes.

The basis of appellant's argument on appeal is that his conduct did not violate the Wiretap Act because none of his conversations with the stopped motorists constituted an "oral communication" as it is defined by the Wiretap Act. Appellant contends that our case law has decreed that the surreptitiously recorded party must have an expectation of privacy in the conversation in question before it constitutes an "oral communication" under the Wiretap Act. He further argues that because none of the motorists could possibly have expected statements to a uniformed police officer to be private and, in fact, testified that they did not believe they were confidential, then no violation of the Wiretap Act occurred because no "oral communication" was intercepted. In the alternative, appellant argues that even if the intercepts are considered

"oral communications" under the Act, that his actions are specifically authorized by § 5704(2)(i).

Before proceeding with our analysis of appellant's rather thought-provoking contentions, it is necessary to reiterate two definitions from the definitional section of the Wiretap Act which affect our analysis:

'Intercept.' Aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device.

. . . .

'Oral communication.' Any oral communication uttered by a person possessing an expectation that such communication is not subject to interception under circumstances justifying such expectation. The term does not include any electronic communication.

18 Pa.C.S.A. § 5702 (in pertinent part).

The centerpiece of appellant's argument, and the crucial case to our discussion, is *Commonwealth v. Henlen,* 522 Pa. 514, 564 A.2d 905 (1989) (*"Henlen II "*). Appellant suggests that *Henlen II* requires a constitutional expectation of privacy whenever determining whether a conversation falls within the definition of oral communication as defined by the Wiretap Act. Our examination of *Henlen II,* however, leads us to believe that this was not the intended result of its holding. Paramount to our understanding of the supreme court's ruling is a review of the history and particular facts of that case.

The appellant in *Henlen II* was a corrections guard at the Mercer County Jail who was suspected in the theft of an inmate's personal property. Pursuant thereto, Mr. Henlen was interviewed by a state police trooper for approximately thirty to forty-five minutes. During the interview, the state trooper took notes, intending to compose a report later. A third party was also present for some of the interview. Unknown to anyone else, however, Henlen had secreted a tape recorder on his person and recorded the entire conversation. Later, believing that the state trooper had harassed him during their interview, Henlen filed a complaint with the

Internal Affairs Division of the Pennsylvania State Police and submitted the tape he had recorded. As a result, Henlen was charged with a violation of the Wiretap Act.

The Court of Common Pleas of Mercer County granted Henlen's petition for a writ of habeas corpus and dismissed the charges against him. Henlen and the trial court maintained that under the circumstances, the state trooper could have no reasonable expectation of privacy and that, therefore, the conversation was not an "oral communication" protected under the Wiretap Act. *Gunderman v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review*, 95 Pa.Cmwlth. 479, 505 A.2d 1112 (1986), was cited in support. In *Gunderman*, a claimant secretly tape-recorded his unemployment compensation hearing. Commonwealth Court held that because a record of the testimony at such hearings was always made, the participants had no legitimate expectation of privacy and the Wiretap Act did not apply.

After the favorable decision for Mr. Henlen, the Commonwealth appealed to this court. We reversed, distinguishing *Gunderman*. Central to our analysis was the following distinction:

Thus the expectation which must be justified under the definition of 'oral communication' is the expectation that one's communication will not be recorded by any electronic, mechanical or other device. The fact that one may have reason to believe that he himself will have to reveal what transpired in a conversation, or that the other party to the conversation may relate to third parties the contents of a communication, does not necessarily mean that a party to the communication should have expected that the communication would be *recorded*, even though the party may not have a reasonable expectation of privacy in the communication.

It is the distinction between 'reasonable expectation of privacy' and 'expectation that such communication is not subject to interception,' which emphasizes the inapplicability of *Gunderman* to the facts before us. Because the hearing which was surreptitiously recorded in *Gunderman* was re-

corded officially, with the knowledge of the participants to the hearing, there was no expectation that the statements made at the hearing would not in fact be 'aurally acquired through the use of an electronic, mechanical or other device.' Hence, the oral statements made at the hearing were not protected by the Wiretap Act.

*Commonwealth v. Henlen,* 368 Pa.Super. 1, 5–6, 533 A.2d 457, 459 (1987) (emphasis in original) (*Henlen I* ). We went on to indicate that the fact situations in *Gunderman* and in *Henlen I* differed crucially. In *Gunderman,* the conversation was being officially recorded and all participants knew so. Therefore, there was an expectation that the communication would be intercepted and that the communication was, therefore, not an "oral communication" as defined by the Wiretap Act. In *Henlen I,* however, we held that the state trooper had no similar expectation that his words would be tape recorded and otherwise intercepted. We thus established a distinction between the expectation of privacy and the expectation of non-interception.

It is interesting to note that in varying situations this analysis can yield differing results as to whether there is either an expectation of privacy or an expectation of non-interception. Generally, where there is an expectation of privacy there is also an expectation of non-interception. Such is not always the case, however. For instance, if one is being examined by his or her physician and knows from past experience that the doctor often carries a small tape recorder in a pocket to record patient interviews, one's expectation of non-interception is nearly non-existent, but the expectation of privacy is still extremely high. On the other hand, if one is speaking with the town gossip at a public swimming pool under circumstances insuring that the gossip is not wearing a body wire, one's expectation of non-interception is very high, but the expectation of privacy is very low. Thus, an expectation of privacy does not always carry a concomitant expectation of non-interception, and vice versa. For purposes of violation of the Wiretap Act, while we consider the expectation

of privacy as a factor, it cannot be the determining factor in our analysis.

In reversing *Henlen I,* the supreme court did *not* reverse or even question the basic distinction that we drew in that decision regarding the expectation of privacy versus the expectation of non-interception. Rather, Justice Zappala, writing for the majority, believed that this court had set down a hard and fast rule that there must be a specific expectation of non-interception in order to qualify a communication as an "oral communication" under the Wiretap Act. The apparent intent of the supreme court in *Henlen II* was simply to indicate that while the definition of "oral communication" did require a specific expectation of non-interception to bring the communication within the ambit of the statutory definition, such expectation must be justified *under the circumstances:*

In the decision below, Superior Court held that the statutory language defining 'oral communication' required that the utterer of such a communication must have a specific expectation that the contents of a discussion will be electronically recorded. *See, Commonwealth v. Henlen,* 368 Pa.Super. 1, 5, 533 A.2d 457, 459 (1987). The definition of 'oral communication' and 'interception', indeed contains such a requirement, but these definitions also make it clear that such an expectation must be justifiable under the *circumstances.*

*Henlen II* at 519, 564 A.2d at 907 (emphasis in original). The supreme court analyzed the situation in *Henlen II* and decided that, under the circumstances, the state trooper should have had an expectation that his words might be intercepted and carried off and that the interview was, therefore, not an "oral communication" as it is defined by the Wiretap Act.

Moreover, the court did *not* direct that we must determine whether the parties had an expectation of privacy in their words in order for their conversation to qualify as an "oral communication." No such litmus test was imposed, but rather the supreme court indicated that the existence of a privacy expectation was a factor in our determinations. Put another way, what the court actually said was that we must determine

whether the parties had an expectation of *non-interception*, but that in making this determination, we may employ the same principles used to determine whether there is an expectation of privacy; and where an expectation of privacy arises, very often there will also be an expectation of non-interception:

> [T]he broad principles of [*Commonwealth v.*] *Blystone*[, 519 Pa. 450, 549 A.2d 81 (1988), *affirmed sub nom. Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990),] relating to the expectation of privacy in a conversation are applicable in determining whether circumstances support a conversant's expectation that his or her conversation would not be intercepted. The broad language of *Blystone* makes it clear that '[w]hat one chooses to do with another's secrets may differ from the expectation of the teller, but it is no longer his secret. How, when and to whom the confidant discloses the confidence is his choosing.'

*Henlen II* at 519, 564 A.2d at 907. By applying the broad principles of the *Blystone* case, the supreme court was essentially directing us to look not to the actual expectations of the speaker as to the likelihood of interception, but rather to the surrounding circumstances in determining what the speaker should expect.

We must also pause to consider what the *Blystone* analysis entails for any inquiry under the Wiretap Act. It is important to keep in mind, in any discussion of our supreme court's decision in *Blystone*, that the issue presented and resolved therein was not the legality or illegality of the interception under the Wiretap Act, but rather the constitutionality of the intercept. In *Blystone*, the court decided that § 5704 of the Wiretap Act, which permitted participant monitoring in Pennsylvania by law enforcement officials, was not unconstitutional under the federal and state constitutions. This was not a difficult decision, because as Justice McDermott stated, the U.S. Supreme Court had specifically found participant monitoring generally not to violate a constitutional right to privacy:

> The United States Supreme Court has held that a person cannot have a justifiable and constitutionally protected ex-

pectation that a person with whom he is conversing will not then or later reveal that conversation to the police. Furthermore, as noted above, the Court has held that one party interceptions do not violate the Fourth Amendment.

Basically, the Supreme Court has recognized the simple fact that a thing remains secret until it is told to other ears, after which one cannot command its keeping. What was private is now on other lips and can no longer belong to the teller. What one chooses to do with another's secrets may differ from the expectation of the teller, but it is no longer his secret. How, when, and to whom the confidant discloses the confidence is his choosing. He may whisper it, write it, or in modern times immediately broadcast it as he hears it. *Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81 (1988), *affirmed sub nom. Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990) (citations omitted), *discussing United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) (plurality opinion), *reh. denied*, 402 U.S. 990, 91 S.Ct. 1643, 29 L.Ed.2d 156 (1971). Our supreme court likewise found that Article 1, § 8 of the Pennsylvania Constitution was not violated.

Nevertheless, while Henlen's or appellant's actions might not be *unconstitutional* under the federal or state constitutions, that does not determine their *legality* under the Wiretap Act. We observe a divergence between the federal and Pennsylvania statutes in this regard. In point, the federal law [1] specifically makes one party participant monitoring lawful for both law enforcement officials and any other person.[2] There-

1. Chapter 119—Wire Interception and Interception of Oral Communications, 18 U.S.C.A. § 2510 *et seq.* ("the Federal Act").

2. 18 U.S.C.A. § 2511(2)(c)(d):
   (c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.
   (d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to

fore Henlen's or appellant's actions would not have been unlawful under the Federal Act. Only nonconsensual third party intercepts are illegal and unconstitutional under federal law without a court order.

In Pennsylvania, we have enacted a much more stringent Act. Under the Wiretap Act, all participant monitoring is illegal, unless specifically excepted by § 5704. In Pennsylvania, our Legislature has determined that although intercepting a communication to which one is a party may not be a violation of a constitutional privacy interest, it so threatens the private nature of social communication as to be considered unlawful in this Commonwealth.[3] Recognizing this concern of the legislation, any analysis of what constitutes an oral communication under the Wiretap Act cannot be limited to an analysis on strict constitutional privacy grounds. The interest protected by the Wiretap Act is directed to a right not to have one's words electronically seized under circumstances which are reasonably justifiable.

Returning to appellant's argument, we note that appellant also recites a recent decision of this court in support of his proposition that, in order to qualify as an "oral communication," there must have been an expectation of privacy as well as an expectation of non-interception. We agree that certain language in *Commonwealth v. Christopher*, 423 Pa.Super. 51, 620 A.2d 494 (1992), *allocatur denied*, 536 Pa. 638, 639 A.2d 23 (1994), may have "muddied the water."

The appellee in *Christopher* was a client of a social worker at the Bedford County Children and Youth Services. On February 18, 1992, Christopher arrived unannounced at Bedford County Children and Youth Services and was greeted in the lobby by his caseworker before being escorted back to the

such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

3. For a fuller discussion of the various interests at stake in cases of participant monitoring, see Kent Greenawalt, *The Consent Problem in Wiretapping & Eavesdropping: Surreptitious Monitoring with the Consent of a Participant in a Conversation*, 68 Columbia L.R. 189 (1968).

caseworker's office, which was shared by another social worker. Christopher and his caseworker then discussed various aspects of his case in the presence of the other social worker. At the conclusion of the impromptu interview, Christopher's caseworker noticed a small tape recorder on Christopher's person. Christopher admitted recording their conversation, and the caseworker reported him to the local police. Charges were brought pursuant to the Wiretap Act, but were dismissed following the filing of a petition for a writ of habeas corpus. In affirming, this court adopted the rationale of the trial court:

As we agree with appellee's argument, and concur with the well-reasoned conclusion of the hearing court, we adopt the rationale underlying the order, which states:

THE COURT: The Defendant argues that the caseworker had no expectation of privacy—confidentiality and relies on *Commonwealth v. Henlen*, a Supreme Court case which has to do with oral communications. Section 5703 defines oral communication as any oral communications uttered by a person possessing an expectation, but such communication is not subject to interception under circumstances justifying such expectation.

Intercept is defined in Section 5702 as aural, A–U–R–A–L, acquisition of the contents of any wire or oral communication through the use of any electronic or mechanical or other device. So, the real issue in this case comes down to the question of whether or not of [sic] the caseworker had an expectation of confidentiality.

*Henlen* is very close and we believe we're bound by it. We believe, under the facts of this case, that the caseworker did not have an expectation of confidentiality under the circumstances. Particularly stated and testified at the Preliminary Hearing that there was nothing to be said to the Defendant that he couldn't tell anybody else. That was his testimony and we're bound by that.

So, . . . [w]e find, as a fact, that the caseworker had no expectation of confidentiality and, therefore, the Defen-

dant did not violate the wiretap act section, the section of the statute followed by wiretapping.

*Christopher* at 560, 620 A.2d at 496–97.

It seems clear from our reading of *Christopher* that *Henlen II* may have been misinterpreted. The court clearly bases its conclusion that the subject communication was not an "oral communication" as defined by the Wiretap Act on the fact that the caseworker had no expectation of privacy rather than no expectation of non-interception. To the extent that *Christopher* stands for this proposition, it is specifically disapproved.

We would also indicate that we believe subsequent decisions of our supreme court are thoroughly consistent with the interpretation that we have given to *Henlen II*. In *Commonwealth v. Louden*, 536 Pa. 180, 638 A.2d 953 (1994), the Loudens were convicted of endangering the welfare of a child. Neighbors had secretly tape recorded conversations ·of the Loudens which were of sufficient volume to be intercepted by a tape recorder located in the neighbors' house. The trial court suppressed these recordings pursuant to our decision in *Henlen I* and the supreme court reversed the suppression pursuant to *Henlen II*. Nevertheless, the critical determinant was that the Loudens should have expected that their conversations might be *intercepted*. The expectation of privacy only entered the court's analysis to help it decide whether an expectation of *non-interception* existed:

The question becomes whether, under these circumstances, the Loudens had a justifiable expectation that their secret conversations, audible next door, were not subject to being intercepted. We think not. As we noted in *Commonwealth v. Henlen*, 522 Pa. 514, 564 A.2d 905 (1989), the broad principles of *Commonwealth v. Blystone*, 519 Pa. 450, 549 A.2d 81 (1988), *cert. granted in part*, *Blystone v. Pennsylvania*, 489 U.S. 1096, 109 S.Ct. 1567, 103 L.Ed.2d 934 (1989), are applicable in determining whether circumstances support a conversant's expectation that his or her conversation would not be intercepted. *Blystone* makes it clear that '[w]hat one chooses to do with another's secrets may differ from the expectation of the teller, but it is no longer his

secret. How, when and to whom the confidant discloses the confidence is his choosing. He may whisper it, write it, or in modern times immediately broadcast it as he hears it.' *Blystone,* 519 Pa. at 462, 549 A.2d at 87, 88.

Applying these principles to the circumstances before us, we are satisfied that once the conversation, threats and arguments between the Loudens and the screams of the children became audible to the Kulovichs, through a dividing wall in their home, the Loudens lost whatever expectation of privacy they had that their secret discussions and conversations would not be overheard, intercepted and memorialized for posterity on tape or whatever device the listeners chose to broadcast the Loudens' secret conversations.

*Louden* at 192, 638 A.2d at 959. We also note that, in dissent, Justice Zappala disagreed, not with the focus of the analysis, whether there must be an expectation of non-interception, but merely with whether an expectation of non-interception existed under the facts of the case.[4]

Most recently, the supreme court again commented on the *Henlen II* rationale in *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994). *Brion* does nothing to change our view of *Henlen II.* We note that *Brion,* like *Blystone,* does not resolve the legality of an interception under the Wiretap Act. Rather, *Brion* speaks to the constitutionality of the intercept in the privacy of one's home under our state constitution. Nevertheless, *Brion* does give some indication of our supreme court's thinking as to *Henlen II,* and as with *Henlen II,* is again authored by Justice Zappala. The court indicated the nature of the inquiry under *Henlen II:*

We reiterated that the Act requires that a person uttering an oral communication, as that term is defined under the

4. Although we admit to some confusion in the *Louden* court's citation to and reliance upon the constitutional analysis in *Blystone,* we are bound to accept the court's analysis under the strict facts of the *Louden* case. *Blystone* involved the constitutionality of consensual participant monitoring while *Louden* concerned a non-consensual, third party interception. Perhaps, the court will someday revisit this analysis. For now, we must seek to reconcile *Louden*'s analysis with other pronouncements of our supreme court.

Act, must have a specific expectation that the contents of a discussion will not be electronically recorded. However, this expectation must be justifiable under the existing circumstances. Implicit in any discussion of an expectation that a communication will not be recorded, is a discussion of the right to privacy.

*Brion* at 259–60, 652 A.2d at 288. Again, we find that the supreme court did not rule that there must be an expectation of privacy in the recorded communication in order to bring it under the definition of "oral communication" as used by the Wiretap Act. The court merely indicated that an expectation of privacy is an important consideration in the total analysis and is crucial when the interception occurs in one's home.

■ Clearly, there are occasions when conversants have *no* expectation of privacy, but when they *do* have an expectation of non-interception. Interception of a communication on these occasions would still violate the Wiretap Act. The case presently under review presents just such an instance. Appellant posits that no one would have an expectation of privacy in any communication to a uniformed police officer. However, it is just as likely that no one would expect that a roadside traffic stop conversation would be secretly recorded. Under the circumstances of this case, while the stopped motorists had no expectation of privacy, they had a very real expectation of non-interception. They legitimately could expect that their words would not be electronically seized and carried away by the officer. Thus, the communications recorded by appellant do qualify as "oral communications" under the Wiretap Act.[5]

The setting of this case clearly distinguishes it from the interview/interrogation atmosphere of *Henlen*. Oral interrogations of suspects by police are often recorded, and at the least, notes are taken to memorialize any conversation or statements of the suspect. Such an atmosphere does not exist in routine traffic stops as occurred instantly.

5. The result would be the same if the motorist was the one doing the intercepting.

Ultimately, if we were to accept appellant's argument that there must be an expectation of privacy in order to meet the definition of "oral communication" under the Wiretap Act, there would be few if any conversations which would merit protection. Under a strictly interpreted *Blystone* analysis, no conversation to which the monitor is a participant would merit protection, because as soon as the speaker utters the words, he has lost his expectation of privacy in them. Thus, no conversation monitored by a participant qualifies as an oral communication. Such an interpretation would subvert the very spirit of the legislation. As set out earlier, the Wiretap Act regards participant monitoring as an illegal activity, albeit not an unconstitutional one, unless specifically permitted under § 5704.

Having determined that the intercepts conducted by appellant involved oral communications within the meaning of the Wiretap Act, we turn to appellant's next contention. Appellant argues, in the alternative, that his conduct fell under one of the Wiretap Act's exceptions to the prohibition of interception. The relevant exception is set forth as follows:

### § 5704. Exceptions to prohibition of interception and disclosure of communications

It shall not be unlawful under this chapter for:

. . . .

(2) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire, electronic or oral communication involving suspected criminal activities where:

(i) such officer or person is a party to the communication; or

(ii) one of the parties to the communication has given prior consent to such interception. However, no interception under this paragraph shall be made unless the Attorney General or a deputy attorney general designated in writing by the Attorney General, or the district attorney, or an assistant district attorney designated in writing by

the district attorney, of the county wherein the interception is to be made, has reviewed the facts and is satisfied that the consent is voluntary and has given prior approval for the interception; however such interception shall be subject to the recording and record keeping requirements of section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom.

18 Pa.C.S.A. § 5704(2)(i) and (ii). Appellant argues, in effect, that any communication to which a law enforcement officer is a party is excepted from the interception prohibition of the Wiretap Act, pursuant to § 5704(2)(i). The Commonwealth responds, however, that the approval and supervision requirements contained in § 5704(2)(ii) apply to § 5704(2)(i) as well. Specifically, the Commonwealth argues that an interception made pursuant to § 5704(2)(i) requires the prior approval of the Attorney General or the district attorney. Appellant counters that the phraseology "under this paragraph" consigns the application of the second sentence of § 5704(2)(ii) solely to § 5704(2)(ii).[6]

We agree with the Commonwealth's interpretation. At first blush, we note that the meaning of "under this paragraph" appears to be ambiguous both from its structural setting and from the internal logic of the statute. Nevertheless, we believe that a closer examination resolves any ambiguity.

We first note that our Legislature has given clear instructions for the interpretation of ambiguous statutory language. Our object in statutory interpretation and construction is

---

**6.** Our review of case law precedents reveals a single case interpreting § 5704 as to whether the approval and supervision requirements of (2)(ii) apply to (2)(i) also. *Smith v. Commonwealth of Pennsylvania, Pennsylvania State Horse Racing Commission,* 115 Pa.Cmwlth. 622, 542 A.2d 185 (1988), held that the review, approval, reporting, and record keeping requirements of § 5704(2)(ii) were not applicable to (2)(i). We are not bound by this holding, and for the reasons we will describe, we specifically decline to follow it.

always to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(a). We are to give effect to all provisions. *Id.* Where the words are not explicit, we rely upon a variety of factors to aid us. These matters include delving into the occasion and necessity of the statute and examining the mischief to be remedied and the object to be obtained. 1 Pa.C.S.A. § 1921(c). Furthermore, grammatical errors will not cause a statute to fail, nor shall the punctuation control. 1 Pa.C.S.A. § 1923. Thus, we are not restricted by the mere structure of a statute, but have been given rein to make a common sense reconstruction if that will better effectuate the will of the Legislature.

As for the structural setting, then, we begin by analyzing the usage of the term "paragraph" as it is employed within the Wiretap Act itself. We find that while the usage is generally consistent, it is not universally so. We observe that the Wiretap Act generally refers to those subdivisions denoted by parenthetic, Arabic numerals as "paragraphs." See, for example, § 5743(b)(1) and (2) and (c)(1). Under this usage, the requirements of § 5704(2)(ii) would appear to apply to all of "paragraph (2)." However, in § 5745(a)(3), we find a reference to "paragraph (1)(ii)." Under this usage, the requirements of § 5704(2)(ii) would appear to apply only to "paragraph (2)(ii)." Nevertheless, the Legislature has provided other, authoritative guidance in this area that resolves this matter.

In the Introduction to the Pennsylvania Consolidated Statutes, which introduction was enacted into law November 25, 1970, there are found the following remarks:

> To encourage uniformity of style, and to provide helpful suggestions relating to the step-by-step mechanics of drafting a codification bill, Legislative Reference Bureau has published a detailed *Style Manual* for the Pennsylvania Consolidated Statutes. *See* 101 Pa.Code § 21.1 *et seq.*

1 Pa.C.S.A Introduction. This *Style Manual,* contained in the Pennsylvania Code, has as one of its provisions, the following:

### § 23.26. Internal divisions of sections.

Whenever internal divisions are necessary, subsections shall be identified by lower case letters, paragraphs by Arabic numerals, subparagraphs by lower case Roman numerals, clauses by capital letters and subclauses by capital Roman numerals, all contained within parentheses, as follows:

| Terminology | Illustrative Symbol |
| --- | --- |
| Subsection | (a) |
| Paragraph | (1) |
| Subparagraph | (i) |
| Clause | (A) |
| Subclause | (I) |

101 Pa.Code § 23.26.

■ Clearly, then, in *section* 5704, the approval and supervisory requirements contained in *sub*paragraph (2)(ii) apply to *all* of *paragraph* (2), including *sub*paragraph (2)(i).

Moreover, while the internal logic of § 5704(2) is also somewhat ambiguous, we find that closer examination again supports the Commonwealth's interpretation. Appellant argues that the restrictions of § 5704(2)(ii) do not apply to § 5704(2)(i) and that § 5704(2)(i) authorizes him, as a police officer, to make any interception he deems appropriate in the pursuance of criminal investigation, without supervision by a local or state Commonwealth attorney, so long as he is a participant.[7] Appellant construes § 5704(2)(ii) to the effect

7. We note that an argument could be made that the type of suspected criminal activity for which § 5704 exempts law enforcement officials is the same as the comprehensive and exclusive list set forth in § 5708. That section authorizes a court order for nonconsensual intercepts by investigative or law enforcement officers having responsibility for an investigation involving suspected criminal activities when such interception may provide evidence of the commission of any of the following of a laundry list of offenses: murder; kidnapping; rape; IDSI; arson; burglary; robbery; theft; bribery; official corruption; numerous gambling related offenses; any offense dangerous to life, limb, or property punishable by imprisonment; intimidation of and retaliation against witnesses or victims; harassment; counterfeiting; prostitution; and any illegal drug-related activities. In fact, the very definition of law enforcement officers as set forth in § 5702 references these crimes and offenses:

'**Investigative or law enforcement officer.**' Any officer of the United States or of the Commonwealth or political subdivision thereof, who

that the primary responsibility of the Commonwealth attorney under § 5704(2)(ii) is to ensure the voluntariness of the consent of one of the participants in an intercept. Based upon this interpretation, appellant further posits that consent is not an issue with a police participant. Appellant concludes that because one of the duties of the Commonwealth attorney under § 5704(2)(ii) does not apply to § 5704(2)(i), then none of them was intended to apply. We believe that analysis is flawed on several accounts.

In *Commonwealth v. Clark,* 374 Pa.Super. 308, 542 A.2d 1036 (1988), *allocatur denied,* 523 Pa. 635, 565 A.2d 444 (1989), we upheld the mandatory nature of the requirements set forth in § 5704(2)(ii) and in so doing set forth the purposes and importance of these requirements:

In his Dissenting Opinion in *Commonwealth v. Schaeffer,* 370 Pa.Super. 179, 536 A.2d 354 (1987), our colleague, Judge Rowley wrote that in his belief the limitations provided to consensual wiretapping found in § 5704(2)(ii) 'are sufficient to guard against the unlimited and indiscriminate use of such interceptions and the evidence obtained therefrom and act as an adequate deterrent to inappropriate police activity. Moreover, such limitations drastically minimize the likelihood of an invasion of the lawabiding citizen's legitimate expectations of privacy.' *Id.* [370 Pa.Super. at 271] 536 A.2d at 400. However, even the minimum protection offered by § 5704(2)(ii) was not followed in this case. The provisions of the Act must be strictly adhered to in order to insure that safeguards are in place to protect persons from unautho-

is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offense. The term shall include, but not be limited to, employees of the Pennsylvania Crime Commission, authorized to investigate crimes enumerated in section 5708 (relating to order authorizing interception of wire or oral communications).

Clearly, the legislature was addressing the legitimate needs of law enforcement to combat serious crime. However, it is difficult to imagine that the General Assembly envisioned routine traffic violations as falling within the purview of such suspected criminal activities such that law enforcement officers could use electronic surveillance at their discretion.

rized surreptitious interceptions. Here, the supervision directed by the Act was not followed. The responsibilities outlined in the Act regarding the duties of the Attorney General, District Attorney or their designee are non-deligable. Those persons responsible for authorizing interceptions under the Act must personally review the facts, ascertain directly from the consenting party the voluntariness of his or her consent and give prior approval to the interceptions. The Assistant District Attorneys' designated to authorize the interception of Appellant's conversations with Mr. McCullough never performed these preparatory duties. Rather, these duties were wrongly delegated to and undertaken by the Pennsylvania State Police.

*Clark* at 316–17, 542 A.2d at 1040. We believe that these concerns apply with equivalent weight to § 5704(2)(i) as well.

Appellant's argument overlooks the fact that § 5704(2)(i), by its clear language ("such officer or person is a party to the communication"), also authorizes participant interception by person participants. Certainly, the review of the voluntariness of the consent of such person participants is the precise focus of the voluntary consent language found in § 5704(2)(ii). Moreover, the other restrictions of § 5704(2)(ii), pertaining to recording, record keeping, and custodianship, should apply equally to police and person participants.

Furthermore, we note that appellant's construction of § 5704(2) renders § 5704(12) mere surplusage:

It shall not be unlawful under this chapter for:

. . . .

(12) Any investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities where the officer or the person is a party to the communication and there is reasonable cause to believe that:

(i) the other party to the communication is either:

(A) holding a hostage; or

(B) has barricaded himself and taken a position of confinement to avoid apprehension; and

(ii) that party:

(A) will resist with the use of weapons; or

(B) is threatening suicide or harm to others.

18 Pa.C.S.A. § 5704(12).

Obviously, if a police participant or other person participant may intercept any communication in a conversation pursuant to a criminal investigation without supervision by a Commonwealth attorney, as appellant's interpretation of § 5704(2) requires, there is no need for the special authorization to do so in hostage situations, which § 5704(12) provides. Our rules of statutory construction prohibit such an interpretation. *See* 1 Pa.C.S.A. § 1922(2). *See also Habecker v. Nationwide Insurance Company*, 299 Pa.Super. 463, 445 A.2d 1222 (1982), and *Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312 (1979).

In conclusion, we hold that the requirements of § 5704(2)(ii), pertaining to the approval and monitoring of interceptions by a prosecuting attorney, apply with equal effect to interceptions authorized under § 5704(2)(i). We believe this interpretation comports with the broad purpose underlying the Wiretap Act, which is to restrict the unbridled and unsupervised interception of oral, wire, and electronic communications by private persons, by police, or by any other agency or concern without imposing any undue burden on law enforcement's responsibility to ferret out criminal activity.

Accordingly, having found no merit in appellant's arguments, we hereby affirm the order of November 7, 1994.

TAMILIA, J., files a dissenting statement.

ROWLEY, President Judge, notes his dissent.

This decision was reached prior to former President Judge ROWLEY's retirement from this court.

120

TAMILIA, Judge, dissenting.

I respectfully dissent. I do not believe there can be an expectation of privacy in an investigative stop by a police officer in the legitimate exercise of his duty as a police officer. The Wiretap Act was meant to preclude intercepts of communication without having established probable cause and the right to search, which is clearly an invasion of privacy prohibited by the Act, if not the Constitution.