**YEAGER'S FUEL, INC., et al.**

v.

**PENNSYLVANIA POWER & LIGHT COMPANY.**

**LOSCH BOILER SALES & SERVICE COMPANY**

v.

**PENNSYLVANIA POWER & LIGHT COMPANY.**

Civ. A. Nos. 91–5176, 92–2359.

United States District Court, E.D. Pennsylvania.

Aug. 3, 1995.

484

David L. Pennington, Catherine Panchou Cox, Brian P. Kirby, Robert Thomas Connor, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, PA, for plaintiffs in Civ. A. No. 91–5176.

Wayne M. Thomas, Kohn, Savett, Klein & Graf, P.C., Philadelphia, PA, for plaintiff Losch Boiler Sales.

Christopher C. Fennell, Jeffrey H. Howard, Peter B. Work, Crowell and Moring, Washington, DC, for defendant Pa. Power & Light Co.

Kirchoff, Inc., Lancaster, PA, movant pro se.

*MEMORANDUM*

PADOVA, District Judge.

## I. BACKGROUND

Plaintiff Losch Boiler Sales & Service Company ("Losch"), a retail fuel oil dealer that supplies and installs heating equipment, alleges that Defendant, Pennsylvania Power & Light Company ("PP & L") violated sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, section 3 of the Clayton Act, 15 U.S.C. § 14, and state law by unlawfully restraining trade in the residential heating fuel and equipment markets in PP & L's service area. Specifically, Losch alleges that PP & L paid cash incentives to (1) plumbing and heating contractors, builders, and developers who agreed to install electric heat pumps, rather than fossil fuel-based heating equipment, in new residential construction ("New Construction Claims"); [1] and (2) homeowners who agreed to convert from fossil fuel to electric heating equipment not supplemented by any fossil fuel heating device ("Conversion Grant Claims" or "Conversion Grant Program").[2] Losch originally sought certification of the class of "[a]ll persons who, from at least April 22, 1988, to date, were engaged in the sale of fuel oil at retail or the sale, installation or maintenance of oil heating equipment within PP & L's service area" ("Broad Class"). Pl.'s Cert. Mot. at 2. On April 27, 1995, I issued a Memorandum and Order ("Opinion") denying class certification. Pursuant to Federal Rule of Civil Procedure 23(c)(1),[3] Losch seeks re-

---

1. Losch alleges that contractors, builders, and developers could only receive a rebate for heat pumps that were ordered from and "installed by one of the various heat pump manufacturing and installation companies selected by PP & L, which include, without limitation, members of the central Eastern Pennsylvania Heat Pump Association ['CEPHPA']." Pl.'s Compl. ¶ 16.

2. On October 5, 1992, I granted summary judgment in favor of PP & L and against Losch on the New Construction Claims because I concluded that state action immunity shielded PP & L's alleged conduct from antitrust liability. *See Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.* 804 F.Supp. 700 (E.D.Pa.1992) (*Yeager's I*), *aff'd in part and remanded in part,* 22 F.3d 1260 (3d Cir.1994) (*Yeager's II*). The Court of Appeals agreed that "PP & L is immune from antitrust liability for offering builders and developers cash grants and other incentives ... for installation of high-efficiency electric heating systems." *Yeager's II,* 22 F.3d at 1263. However, the Court of Appeals stated that "PP & L is not immune from antitrust liability to the extent it made these offers contingent upon 'all-electric development agreements.'" *Id.* All-electric development agreements "block the entry of fossil fuels, especially gas, into new developments," and are unrelated to Pennsylvania's "state policy

in favor of energy conservation and load management." *Id.* n. 1. Thus, with respect to the New Construction Claims, the scope of the remand encompasses incentives that PP & L made contingent upon all-electric development agreements.

On June 27, 1994, following remand, Losch filed an Amended Complaint asserting the Conversion Grant Claims.

The following discussion assumes familiarity with the *Yeager's I* and *Yeager's II* opinions.

3. "An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits." Fed.R.Civ.P. 23(c)(1). *See also Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 480–81, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978) (noting that an order denying class certification may not be irreparable, and may be reviewed by the district court prior to final judgment); *In re General Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 792 n. 14 (3d Cir.1995) (all certification orders are conditional until the entry of judgment), *cert. denied,* —— U.S. ——, 116 S.Ct. 88, —— L.Ed.2d —— (1995).

Losch has not argued that reconsideration is proper under Local Rule of Civil Procedure

consideration of my Opinion to the extent that Losch now seeks certification of a class of "all persons who from at least April 22, 1988 to date were engaged in the sale of fuel oil at retail within [PP & L's] service area" ("Limited Class"). Pl.'s Recon. Mot. at 2. Specifically, Losch seeks class certification limited to the issue of "whether or not PP & L's grants to builders and developers in conjunction with new construction which are conditioned upon all-electric development agreements violated the antitrust laws." Id.[4] Alternatively, pursuant to 28 U.S.C.A. § 1292(b) (West 1993), Losch requests that I certify the Order for interlocutory appeal. For the following reasons, I shall deny the motion to certify the Limited Class and deny the motion to certify the Order for interlocutory appeal.

## II. DISCUSSION

Losch strongly suggests that I committed error by previously failing to grant limited class certification. See Pl.'s Recon. Mot. at 2–3. The record in this case, however, belies that suggestion. At oral argument, after I asked Losch to redefine an appropriate class limited to determining liability, see Transcript of 3/31/95 Hearing ("Tr. I") at 2, 17, Losch repeatedly rejected that suggestion. See id. at 9, 17. Additionally, although Losch explicitly rejected my query about the need for subclassing, see id. at 24, I expressly addressed subclassing in my prior ruling, but concluded that the technique could not overcome the problems associated with the inherently divergent interests within the class. See 162 F.R.D. at 480. Losch has not cited any authority for the proposition that a district court must resuscitate a problematic class definition, or impose a limited form of class certification that the putative class representative clearly and unequivocally opposes. Nevertheless, I shall apply the Rule 23 standards to decide Losch's new request for limited class certification.

7.1(g), and I have not applied the Rule 7.1(g) standard to resolve Losch's motion.

### A. Numerosity, Commonality, Typicality

A plaintiff seeking class certification "must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met." *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir.1994). I previously concluded with respect to the Broad Class that Losch satisfied numerosity, commonality, and typicality, but failed to establish adequacy of representation, predominance, and superiority. *See* 162 F.R.D. at 476–82. For the same reasons set forth in my prior memorandum, I conclude that Losch satisfies the numerosity, commonality, and typicality requirements with respect to the Limited Class.

### B. Adequacy

■ To establish adequate representation, "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir.1992) (internal quotation and citation omitted). PP & L does not challenge the qualifications and experience of Losch's counsel, but asserts that Losch has interests antagonistic to those of the Limited Class. Specifically, PP & L argues that the class consists of subgroups with conflicting business interests, and class members have potentially conflicting interests regarding settlement. I shall address these issues in turn.

#### 1) Divergent Interests Within the Class

PP & L asserts that Losch cannot satisfy the adequacy requirement because the Limited Class consists of (a) CEPHPA members who benefitted from PP & L's challenged incentive programs, and non-CEPHPA members, such as Losch, who did not participate in the challenged conduct; and (b) fuel oil dealers who exclusively sold oil during the relevant time period, and fuel dealers such as Losch who sold fuel oil and other competing fossil fuels.

4. Rule 23 provides that "[w]hen appropriate an action may be brought or maintained as a class action with respect to particular issues." Fed. R.Civ.P. 23(c)(4)(A).

Losch asserts that CEPHPA membership is irrelevant because Losch seeks certification limited to the issue of whether PP & L's new construction grants to *builders* and *developers* (but not CEPHPA members) violated the antitrust laws. I disagree. PP & L has submitted two affidavits, uncontroverted by Losch, by fuel oil dealers who aver that CEPHPA members benefit from PP & L's challenged grant programs, whereas non-members may not benefit. *See* Def.'s Opp'n Mem. Ex. F ¶ 14; *id.* Ex. H ¶ 11. Although PP & L allegedly did not distribute grants directly to CEPHPA members, CEPHPA members apparently benefitted from PP & L's incentive program because a builder or developer could not receive a grant unless a CEPHPA member installed a heat pump in the new home. *See id.* Ex. E. at 135. As a non-CEPHPA member, Losch cannot adequately represent the interests of CEPHPA members who may strongly oppose Losch's effort to establish that PP & L violated the antitrust laws. *See Pennsylvania Dental Ass'n v. Medical Serv. Ass'n,* 745 F.2d 248, 263 (3d Cir.1984) (where class was comprised of (1) dentists who participated with the defendant in an allegedly anticompetitive fee-for-service plan, and (2) non-participating dentists, the named representative, a non-participating dentist, could not adequately represent the participating dentists), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2021, 85 L.Ed.2d 303 (1985).[5]

### 2) Settlement Conflict

I previously concluded that because (a) the Pennsylvania Petroleum Association ("PPA") partially funded the *Yeager's* litigation; (b) PPA obtained a repayment agreement from the *Yeager's* plaintiffs with respect to any possible settlement; (c) the *Yeager's* plaintiffs are also members of the proposed class; and (d) Wayne Thomas, counsel for the proposed class, represented PPA during discovery proceedings in the *Yeager's* action, "Losch's potentially conflicting interests with some members of the proposed class regarding settlement raise serious concern regarding its ability to adequately represent the proposed class for litigation." 162 F.R.D. at 481. Losch seeks to supplement the record to include a PPA resolution waiving its right to reimbursement of *Yeager's* litigation expenses, and renouncing any agreement regarding PPA's right to consent to settlement. *See* Pl.'s Recon. Mot. Ex. A. I shall grant Losch's request and include the PPA resolution as part of the record for the Limited Class action.[6]

Nevertheless, despite the PPA resolution, I conclude that Losch may not adequately represent of the Limited Class for settlement. As I stated in my prior ruling, "[t]o varying degrees, settlement potential is a facet of every case, and is a consideration that often partly controls the conduct and course of litigation." 162 F.R.D. at 481. Indeed, at oral argument, Losch vigorously asserted that limited class certification still offers settlement possibilities, and Losch may effectively represent the Limited Class for settlement purposes. *See* Transcript of 5/30/95 Hearing at 47–49, 62. The practical realities of this case, however, undermine Losch's unwavering enthusiasm to represent some class of plaintiffs allegedly harmed by PP & L's incentive programs.

Assuming that Losch, as class representative, establishes that PP & L violated the antitrust laws, such a finding amounts at most to the equivalent of a declaratory judgment on the issue of violation. To establish PP & L's liability for treble damages, individual plaintiffs must subsequently come forward armed with individualized proof of fact of damage and amount of damages, issues that will not be determined in the context of the limited class action. Nevertheless, Losch

---

5. Losch also asserts that its sales of coal and fuel oil are irrelevant because Losch no longer seeks certification with respect to fact of damage and amount of damages. I agree. Because the proposed limited certification does not require any proof of individual issues of class members' damages, there would be little opportunity for intra-class conflict regarding *actual* allocation of lost business.

6. Although it does not alter my decision, I shall also grant Losch's request to supplement the record to include the affidavit of Catherine Panchou Cox, counsel for *Yeager's* plaintiffs, regarding attorney time required to respond to PP & L's discovery requests.

asserts that once it establishes PP & L's violation (or perhaps even beforehand), PP & L will be eager to settle the litigation, and Losch may then fairly and adequately represent the Limited Class for settlement with respect to *aggregate* damages. I disagree for two reasons.

First, Losch's "aggregation" theory closely resembles "fluid recovery," a procedural vehicle used to avoid problems associated with determining individual damages issues by allowing gross damages on behalf of "the class as a whole." *See, e.g., In re Hotel Telephone Charges,* 500 F.2d 86, 89–90 (9th Cir.1974); *Eisen v. Carlisle & Jacquelin,* 479 F.2d 1005, 1010 (2d Cir.1973), *rev'd on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Once the factfinder determines cumulative classwide damages, the defendant pays that sum into court, and then each class member must individually prove fact of damage and amount of damages to claim her share of the aggregate fund. However, "allowing gross damages by treating unsubstantiated claims of class members collectively significantly alters substantive rights under the antitrust statutes … [and would effectively] dispens[e] with individual proof of damages." *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1305 (9th Cir.1990) (quoting *Hotel Telephone,* 500 F.2d at 90). By certifying the Limited Class, I would effectively empower Losch, which only represents itself for individual damages, to impose upon PP & L at a settlement table the yet unsubstantiated claims of several hundred individual *potential* claimants who remain unrepresented for damages purposes. *Cf. General Motors,* 55 F.3d at 784. No tortured interpretation of Rule 23 supports such an untoward result, which in my judgment would impede rather than advance an orderly and amicable resolution of *all* the claims in this litigation.

Second, Losch's incentive to fairly and adequately represent the Limited Class for settlement purposes remains strongly tied to its subsequent ability to prove its own fact of damage and amount of damages, a task that puts Losch at odds with every other member of the Limited Class. *See* 162 F.R.D. at 477–79. Thus, Losch's efforts to certify a class action limited to violation does not avoid potential intra-class conflict with respect to settlement that inherently exists at every stage of this litigation. *Cf. Chestnut Fleet Rentals, Inc. v. Hertz Corp.,* 72 F.R.D. 541, 546 (E.D.Pa.1976) (where class consists of competitors in limited market seeking money damages for business not done, intra-class conflict permeates the entire case). Because this case cannot be neatly parsed into discrete components that have no bearing on other aspects of the litigation, the proposed Limited Class does not avoid Losch's potential conflict regarding settlement.

Accordingly, because Losch cannot represent CEPHPA members, and because of inherent intra-class conflict regarding settlement, I conclude that Losch has failed to demonstrate adequacy of representation.

### C. Predominance

■ A class action may be certified under Rule 23(b)(3) only if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Rule 23(b)(3). Losch asserts that where class certification is limited to violation, "it of necessity is the predominant issue." Pl.'s Recon. Mot. at 9. I agree.[7]

---

**7.** Losch states that my prior finding "that because each member of the class must first prove fact of damage, individual issues will predominate—is in conflict with recent Third Circuit law." Pl.'s Recon Mot. at 8 (citing *General Motors,* 55 F.3d at 817). I disagree. The Court of Appeals has stated that

> Rule 23(a) does not require that class members share every factual and legal predicate to meet the commonality and typicality standards. Indeed, a number of mass tort class actions have been certified notwithstanding individual is-

sues of causation, reliance, and damages. Because separate proceedings can, if necessary, be held on individualized issues such as damages or reliance, such individual questions do not ordinarily preclude the use of the class action device.

*General Motors,* 55 F.3d at 817 (emphasis indicating prefatory text that Losch failed to quote) (internal citations omitted). Read in appropriate context, the Court of Appeals' admonition pertains to the commonality and typicality requirements under Rule 23(a). Although to some ex-

To establish that PP & L violated section 1 of the Sherman Act, Losch must show (1) a contract, combination, or conspiracy; (2) restraint of trade; and (3) an effect on interstate commerce. *See Weiss v. York Hosp.*, 745 F.2d 786, 812 (3d Cir.1984), *cert. denied*, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985). To show that PP & L violated Section 2 of the Sherman Act by attempted monopolization, Losch must demonstrate that PP & L (1) engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) has a dangerous probability of achieving monopoly power in the relevant market. *See Spectrum Sports, Inc. v. McQuillan*, — U.S. —, — – —, 113 S.Ct. 884, 890–92, 122 L.Ed.2d 247 (1993); *Pastore v. Bell Tele. Co. of Pennsylvania*, 24 F.3d 508, 512 (3d Cir.1994). To demonstrate that PP & L violated Section 3 of the Clayton Act, Losch must show that the all-electric development agreements foreclosed competition in a substantial share of the relevant market in the line of commerce affected. *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327–28, 81 S.Ct. 623, 628, 5 L.Ed.2d 580 (1961). Because proof of each of these elements focuses on PP & L's activities and the relevant market, but does not focus on individual issues concerning the class members', it presently appears that questions of law or fact common to Limited Class predominate over any questions affecting only individual members.

### D. Superiority

■ Losch asserts that certifying the Limited Class is superior to alternative methods of adjudicating this dispute. I disagree.[8]

Losch seeks to avoid the inherent intraclass conflict regarding fact of damage and amount of damages by representing the Limited Class only for violation, and only with respect to the New Construction Claims. Members of the Limited Class may, however, have lingering reservations about Losch's ability to represent the class unencumbered by the baggage of that inherent conflict, and may be encouraged to opt out. However, if Losch establishes violation, class members who opt out may not be entitled to bind PP & L to the preclusive effects of that judgment, but instead have to relitigate violation. *See Premier Elec. Constr. Co. v. National Elec. Contrac. Ass'n, Inc.*, 814 F.2d 358, 367 (7th Cir.1987) (based on the 1966 amendments to Rule 23, class members who opt out may not claim the benefit of the class victory by using offensive non-mutual collateral estoppel). A strict application of *Premier Electrical* forces absentee class members to either opt out and re-litigate every issue in the case, or remain in a Limited Class represented by a party fettered by intra-class conflict. In this case, therefore, limited class certification would not prevent relitigation of violation, even if Losch prevails on behalf of the Limited Class.

■ By contrast, if separate actions are consolidated, and a single "test case" establishes violation, *see Bogus v. American Speech & Hearing Ass'n*, 582 F.2d 277, 290 (3d Cir.1978); Manual for Complex Litiga-

---

tent every class action involves individual questions, Rule 23(b)(3) clearly mandates that certification is only appropriate when common questions of law or fact *predominate* over any questions affecting only individual members.

**8.** I previously concluded that Losch had failed to demonstrate that a class action is superior to other available methods for the fair and efficient adjudication of the controversy, and that consolidation was one possible alternative that avoids the problems associated with the Broad Class. Losch argues that this ruling was inconsistent with my finding that the class was so numerous that joinder is impracticable. Losch's assertion, if true, would effectively vitiate any meaningful distinction between the numerosity requirement and the superiority requirement. Apparently ac-

cording to Losch, once a district court concluded that joinder is impracticable, the court would be required to also conclude that a class action is superior to alternative methods of resolving the parties' dispute. That, however, is not what Rule 23(a) mandates. *See Wilson v. Pennsylvania State Police Dep't*, No. 94–6547, 1995 WL 422750, at *2 (E.D.Pa. July 17, 1995) (noting that to satisfy the numerosity requirement, joinder must be impracticable, not impossible, and that "[i]mpracticability is a subjective determination based on number, expediency, and inconvenience of trying individual suits."). Contrary to Losch's interpretation, there is nothing inconsistent in my prior ruling regarding numerosity and superiority.

tion, Second § 21.63 (1985),[9] potential class members may rely on offensive non-mutual collateral estoppel and thereby avoid the need to relitigate that issue. Under such circumstances, Losch has failed to show that limited class certification is superior to alternative forms of resolving this complex dispute.[10]

## III. Interlocutory Appeal

In the alternative to limited class certification, Losch requests that I certify my April 27, 1995 Order for interlocutory appeal. I shall deny Losch's alternative request.

■ A district judge may certify an order for interlocutory appeal if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C.A. § 1292(b) (West 1993). The decision to certify lies within the sound discretion of the trial court, and the moving party bears the burden of showing that "exceptional circumstances justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after entry of a final judgment." *Rottmund v. Continental Assur. Co.,* 813 F.Supp. 1104, 1112 (E.D.Pa.1992).

■ I agree that the Order involves a controlling question of whether intra-class conflict is inherent in a competitor class seeking money damages for limited market lost business. However, I see no precedential basis that constitutes a substantial ground for difference of opinion. Within the Third Circuit, seven district court cases consistently hold that intra-class conflict is in-

herent under such circumstances. *See Glictronix Corp. v. American Tel. & Teleg. Co.,* 603 F.Supp. 552, 585 (D.N.J.1984); *Am/Comm Systems, Inc. v. American Telephone & Telegraph Co.,* 101 F.R.D. 317, 322 (E.D.Pa.1984); *Franklin Container Corp. v. International Paper Co.,* 1982 WL 1958, at *3 (E.D.Pa. May 12, 1982); *Southern Snack Foods, Inc. v. J & J Snack Foods Corp.,* 79 F.R.D. 678, 682 (D.N.J.1978); *Chestnut Fleet Rentals, Inc. v. Hertz Corp.,* 72 F.R.D. 541, 546 (E.D.Pa.1976); *Al Barnett & Son, Inc. v. Outboard Marine Corp.,* 64 F.R.D. 43, 50–51 (D.Del.1974); *William Goldman Theatres, Inc. v. Paramount Film Distrib. Corp.,* 49 F.R.D. 35, 41 (E.D.Pa.1969). By contrast, a single district court case, based on unique and distinguishable factual circumstances, *see* 162 F.R.D. at 479 n. 13, held that intra-class conflict regarding proof of fact of damage was not " 'so overriding' to itself preclude class certification" based on inadequate representation. *Christiana Mortgage v. Delaware Mortgage Bankers Ass'n,* 136 F.R.D. 372, 381 (D.Del.1991). Because I do not find that *Christiana Mortgage* indicates *substantial* ground for difference of opinion, I shall deny Losch's motion for § 1292(b) certification.

---

**9.** Losch has stated that the 21 *Yeager's* plaintiffs will continue to prosecute their litigation even if class certification is denied. *See* Op. at 19.

**10.** Losch asserts that "if any doubt exists as to the propriety of class certification, it should be resolved in favor of certifying a class." Pl.'s Recon. Mot. at 9 n. 3 (citing *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970)). Although that precept may be justified in close cases, Losch has failed to cite any authority for the proposition that a district court should dis-

criminate in favor of class certification where the putative class representative fails to clearly demonstrate that two of the six requirements under Rule 23 have been satisfied. Because Rule 23 serves in large part to protect the due process rights of absent class members, *see General Motors,* 55 F.3d at 796, 798, in clearly questionable cases, such as this one, where the moving party has failed to adequately demonstrate adequacy and superiority, class certification is inappropriate.