**Daulph KLINE and Terry Kline, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**SECURITY GUARDS, INC., Dana Corporation and Radio Maintenance, Inc., Defendants.**

No. CIV.A. 00–CV–566.

United States District Court, E.D. Pennsylvania.

Aug. 8, 2000.

---

Eric L. Keepers, Lancaster, PA and Simon Grill, Reading, PA, for plaintiffs.

Joshua Horn, Philadelphia, PA; Scott F. Cooper, and Christine L. Viglioti, Philadelphia, PA; Donald M. Davis, Philadelphia, PA, for defendants.

1. 18 PA. CONS. STAT. ANN. § 5725(a).

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

Plaintiffs Daulph and Terry Kline ("Plaintiffs") bring this case against Security Guards, Inc., Dana Corporation, and Radio Maintenance, Inc. ("Defendants"). Plaintiffs allege violations of Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("Wiretap Act")[1], conspiracy, and negligent supervision, each arising from Defendants' alleged electronic surveillance of oral communications by individuals at Dana Corporation over a three-month period. Currently before the court is Plaintiffs' Motion for Class Certification; they seek to establish themselves as the representatives of the proposed class. Defendants have moved to oppose Plaintiffs' Motion for Class Certification. The Court has before it Plaintiffs' Motion for Class Certification ("Pls.' Mot. for Class Cert."), Defendant Dana's Motion in Opposition to Plaintiffs' Motion for Class Certification ("Def. Dana's Opp. to Mot."), Defendant Security Guards, Inc.'s Motion in Opposition to Plaintiffs' Motion for Class Certification ("Def. SGI's Opp. to Mot."), Defendant Radio Maintenance, Inc.'s Motion in Opposition to Plaintiffs' Motion for Class Certification ("Def. RMI's Opp. to Mot."), Plaintiffs' Reply Memorandum of Law in Support of Motion for Class Certification ("Pls.' Reply"), and Defendant Dana's Sur–Reply Memorandum Opposing Plaintiffs' Motion for Class Certification ("Def. Dana's Sur–Reply").

## I. BACKGROUND

The proposed class action seeks damages from Dana Corporation ("Dana"), Security Guards, Inc. ("SGI"), and Radio Maintenance, Inc. ("RMI"). Plaintiffs claim that Defendants unlawfully intercepted oral communications over a three-month period via electronic surveillance. The oral communications allegedly intercepted were those of employees and others using the employee entrance to the Heavy Truck Division at Dana during the period in question. The following are material facts alleged by the Plaintiffs.

Employees of Dana[2] must enter the building through both an exterior and an interior

2. Plaintiffs and proposed class representatives Daulph and Terry Kline were employees of Dana

set of side-by-side glass doors in order to access employee time clocks. The time clocks are located at the employee entrance to the Heavy Truck Division. *See* Pls.' Compl. at ¶¶ 9–10. On or about October 1, 1998, Dana installed two new time clocks, locating them in the area between the exterior and interior glass doors. *Id.* at ¶ 16. The new clocks were within two feet of a pay telephone, which itself was within 18 inches of a telephone facility; the latter allowed wire communications both within and outside Dana. *Id.* at ¶¶ 11–12. Plaintiffs allege that, contemporaneously with installing the new time clocks, Dana purchased an electronic surveillance system from RMI, which RMI installed. *Id.* at ¶ 21.

The surveillance system consisted of two cameras, each of which had a microphone that was able to record all sound within fifteen feet. Pls.' Reply at 1. One camera was located approximately three feet above the telephone facilities. Pls.' Compl. at ¶ 18. The cameras, via an attached wire, transmitted the captured audio and video feed to an adjoining room, where there was a video monitor with integrated audio speakers atop a videocassette recorder. *Id.* at ¶¶ 19–20. The videocassette recorder was capable of recording 24 hours per day, and could also superimpose the date and time onto the recorded image. Pls.' Reply at 2.

Allegedly, SGI, employed by Dana to provide general security, and Dana used the electronic surveillance system to illegally capture and disclose oral and wire communications of the Plaintiffs and other employees and outside vendors who used the employee entrance during the time period at issue.[3]

Specifically, Plaintiffs assert their oral communications were intercepted when they met other employees in the area where the alleged monitoring took place, including times when they were conducting union business. Pls.' Compl. at ¶ 25. Plaintiffs further allege that one side of their wire communications were intercepted, while they were using the phones located near the time clocks. *Id.* at ¶ 26. Plaintiffs assert that the Defendants illegally intercepted oral communications from the time the electronic surveillance equipment was installed in October until the equipment was removed in December.[4] *Id.* at ¶ 36.

In their Complaint, Plaintiffs sought class certification for "all persons who were present in Dana Corporation's Heavy Truck Division (Weiser Building) located in Reading, Berks County, Pennsylvania, during the period of time from or on or about September 1, 1998 to on or about November 30, 1998 who were subjected to unlawful electronic audio surveillance." *Id.* at 213. Included in the proposed class were Dana employees assigned to the Heavy Truck Division, Dana employees who used facilities in the Heavy Truck Division, and other, unknown individuals. *Id.*

In Plaintiffs' subsequent Motion for Class Certification, the class was changed to include "[a]ll persons whose communications were intercepted by electronic surveillance" at the building housing Dana's Heavy Truck Division. The time period at issue was also shifted to October 1, 1998 through December 31, 1998. Pls.' Mot. for Class Cert. at 1.

Plaintiffs further modified the definition for the proposed class in their Reply in Sup-

---

and also members of the United Steelworkers of America labor organization during the time period in question. Pls.' Compl. at ¶ 7, Def. Dana's Reply at ¶ 7.

**3.** Defendants deny that they engaged in, or conspired with others to conduct, unlawful surveillance of individuals at the Dana facility. Def. Dana's Reply to Mot. at 4. Indeed, Dana informed this Court that there would be a serious dispute over whether interception took place, citing as support Union Representative Robert Crupi's affidavit. Specifically, Dana relies on Crupi's statement that, *"William Pickup and I were unable to find any evidence of audio surveillance." Id.* at 4–5, quoting Crupi Aff. at ¶ 5.

Dana's use of this statement, quoted out of context, is at best misleading. The following paragraph of the affidavit states: "[l]ater I learned that the cameras contained hidden microphones and that conversations had been recorded and had been and could be heard from the speakers in 'Control'." Crupi Aff. at ¶ 6. We cannot fathom that Dana sincerely believed the affidavit to stand for the proposition claimed.

**4.** Defendants claim the video cameras were removed on October 28, 1998. Wagner Aff. at ¶¶ 35, 37, 41.

port of Motion for Class Certification. The class would consist of "[a]ll persons who passed through the employee entrance" at Dana's Heavy Truck Division building from October 1, 1998 through December 31, 1998. Pls.' Reply at 3.

Plaintiffs assert that they are adequate representatives of the potential class and that their claims and defenses are typical of the claims and defenses of the other members of the proposed class. Pls.' Compl. at ¶¶ 216–17.

## II. DISCUSSION

Class actions are governed by Federal Rule of Civil Procedure 23. A plaintiff seeking class certification "must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met." *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir.1994); *see* FED. R. CIV. P. 23. Rule 23(a) provides that:

> One or more members of a class may sue... as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims... of the representative parties are typical of the claims... of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.*

Plaintiffs have moved for certification pursuant to Rule 23(b)(3). Pls.' Mot. for Class Cert. at 11. Rule 23(b)(3) is satisfied if the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

■ Plaintiffs bear the burden of proving that all of the requirements for certification have been met. *See, e.g., Amchem Products v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). District courts must undertake a "rigorous analysis" to ensure that the putative class and its proposed representative satisfy each of the prerequisites to class certification. *See Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). *Baby Neal*, 43 F.3d at 55; *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 445 (E.D.Pa. 2000). Moreover, the court has broad discretion in determining whether a particular action complies with Rule 23. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979).

For the reasons that follow, Plaintiffs' motion for class certification is denied.

### A. Class Definition

■ A prerequisite to a Rule 23 action is the actual existence of a "class." *See, e.g., Reilly v. Gould, Inc.*, 965 F.Supp. 588, 596 (M.D.Pa.1997); *Clay v. American Tobacco Co.*, 188 F.R.D. 483 (S.D.Ill.1999). The class must be sufficiently identifiable without being overly broad. *See Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir.1977); *Substitutes United for Better Schools v. Rohter*, 496 F.Supp. 1017, 1021 (N.D.Ill.1980). Assuming that the general outlines of membership can be determined at the outset of the litigation, a class will be deemed to exist. *See Alliance to End Repression* at 977; *Reilly*, 965 F.Supp. at 596. Plaintiffs have proposed three different class definitions; however, none are sufficient to meet the requirements of a valid class under Rule 23.

■ Plaintiffs have not met the minimum requirement of "defin[ing] the class in a way that enables the court to determine whether a particular individual is a class member." *Forman v. Data Transfer*, 164 F.R.D. 400, 403 (E.D.Pa.1995). In Plaintiffs' Motion for Class Certification, they put forth a definition of a class comprising "all persons whose communications were intercepted by electronic surveillance" in the employee entrance at Dana during the relevant time period. Pls.' Mot. for Class Cert. at 1.[5] Defendants claim

---

**5.** The class proposed in the Complaint would have required an individual examination of each alleged class member to determine the issue of "unlawful" surveillance simply to determine

that it will be impossible to determine which persons had their oral communications intercepted until the finder of fact makes the determination of whether any interceptions occurred. They further note that under Pennsylvania law, which we will assume for the purposes of this motion to govern, "interception of a person's communication is not unlawful under the Wiretap Act unless the communication is an 'Oral Communication'", as that term is defined by the Act.[6] Thus, this proposed class action, using any of the Plaintiffs' definitions, would entail the very sort of mini-hearing on the merits of each proposed class member's case that made a class action inappropriate in *Sanneman.*

 In order to decide if a person were a class member, we would have to make a number of individual determinations. Primarily, we would need to inquire if the proposed member satisfied the requirements of the Wiretap Act. 18 PA. CONS. STAT. ANN. § 5703. To establish a violation of the Wiretap Act, a plaintiff must demonstrate: "(1) that he engaged in an oral communication; (2) that he possessed an expectation that the communication would not be intercepted; (3) that his expectation was justifiable under the circumstances; and (4) that the defendant attempted to, or successfully intercepted the communication, or encouraged another to do so." *Agnew v. Dupler,* 553 Pa. 33, 717 A.2d 519, 522 (1998). "Interception" is defined by the Wiretap Act as: "[a]ural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device." 18 PA. CONS. STAT. ANN. § 5702.

 The "proper inquiries" for determining what constitutes an oral communication under the Wiretap Act are "whether the speaker had a specific expectation that the contents of the discussion would not be intercepted, and whether that expectation was justifiable under the existing circumstances." *Id.* at 523. In determining whether an expectation of non-interception was justified, courts must employ those principles applicable to the right to privacy, as there can be no expectation of non-interception absent a reasonable expectation of privacy.[7] *Id.* Hence, courts should examine first whether the plaintiff exhibited an expectation of privacy, and second whether this expectation is reasonable from society's standpoint. *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81, 87 (1988), *aff'd on other grounds sub nom., Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). Therefore, "a conversation amounts to a protected 'oral communication' under the Wiretap Act only where the speaker possessed a reasonable expectation of privacy in the conversation." *Agnew,* 717 A.2d at 523. The reasonableness standard is objective, not subjective. *Id.*

The Pennsylvania Supreme Court's decision in *Agnew* makes clear that there is an additional individual inquiry for deciding whether a person would be a member of the class. We would need to analyze the circumstances surrounding a prospective class member's presence in the employee entrance area at Dana to determine if he or she had an objectively reasonable expectation of pri-

---

class membership. This would require us to resolve the central issue of liability in this case. *See Forman v. Data Transfer,* 164 F.R.D. 400, 403 (refusing to certify a class where determining membership in the class required resolving the liability issue); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (a court may not inquire into the merits of the case at the class certification stage.) Thus, this proposal is not a valid class under Rule 23. Even if it were, it would do nothing to alleviate the deficiencies that would still exist with this proposal under Rule 23(b)(3).

**6.** 18 PA. CONS. STAT. ANN. § 5702 provides in relevant part: " 'Oral Communication.' Any oral communications uttered by a person possessing an expectation that such communication is not

subject to interception under circumstances justifying such expectation."

**7.** Plaintiffs rely on *Commonwealth v. McIvor,* in which the Pennsylvania Superior Court held that automobile drivers' statements to a state police officer were "oral communications" under the Wiretap Act despite that each driver testified to a lack of an expectation of privacy. *McIvor,* 448 Pa.Super. 98, 670 A.2d 697, 698, 703–04 (1996) (en banc). However, Plaintiffs' reliance is misplaced, as the Pennsylvania Supreme Court clearly stated after *McIvor* that "it is not possible to have an expectation of non-interception absent an expectation of privacy." *Agnew,* 553 Pa. 33, 717 A.2d 519, 523. The *Agnew* decision's interpretation of the Wiretap Act is controlling.

vacy. Only then could we find that his or her conversations were protected "oral communications" under the Wiretap Act.

 Plaintiffs argue that an examination of the surrounding circumstances, which are identical for all who passed through the employee entrance, will allow this Court to infer an objectively reasonable expectation of non-interception for each person who engaged in a conversation there. Pls.' Reply at 15. However, the standard for determining a justifiable expectation of non-interception is whether the speaker had a justifiable expectation of privacy, not whether the speaker had a justifiable expectation that his or her words would not be seized electronically. *Agnew*, 717 A.2d at 521–22. Outside of certain commonalities, such as the size of the room and the location of SGI's personnel, individual factors impact an objective expectation of privacy. As we stated above, we would need to determine for each class member whether he or she had exhibited an expectation of privacy; and, in addition, whether this expectation was objectively reasonable.

These factors are likely to be markedly different for members of the putative class. For instance, a class member who had a conversation while other people were nearby, such as during the start of the work shift, would not have nearly the objective expectation of privacy as would a member who was alone in the entranceway and quietly conducting union business on the telephone. The multitude of individual inquiries simply to determine class membership is inapposite to the expected efficiencies of a class action.

Plaintiffs, in an alternative class proposal, maintain that by merely being in the entrance to Dana's Heavy Truck Facility,[8] potential class members would have been subjected to attempted interception via the alleged continuous electronic audio surveillance. Thus, all who passed through the entranceway are class members. Pls.' Reply. at 3. However, attempted interception is not sufficient to establish liability under the Wiretap Act, as the Pennsylvania Supreme Court made clear in *Agnew*. The

class member must also have exhibited an objectively reasonable expectation of privacy, determined according to the circumstances surrounding the communication. Again, this Court would be faced with the administrative burden of holding mini-hearings on each proposed class member.

Thus, the difficulties inherent in identifying membership in the class present serious administrative burdens that are incongruous with the efficiencies expected in a class action. Many of the streamlining benefits that are the hallmark of a proper class action would be lost in the morass of individualized determinations of class membership. *See Sanneman*, 191 F.R.D. at 445 (certification denied where determining class membership "would essentially require a mini-hearing on the merits" of each proposed class member's case); *Wanstrath v. Time Warner Entertainment Co., L.P.*, 1997 WL 122815, at *3 (S.D.N.Y. March 17, 1997) (certification denied, as it would "bring thousands of possible claimants whose presence will... require a multitude of mini-trials... which will be tremendously time consuming and costly"); *Luedke v. Delta Airlines*, 155 B.R. 327, 332 (S.D.N.Y.1993) (certification denied because it would require "an unmanageable number of individualized, somewhat subjective determinations of the validity" of the potential claims); *Hagen v. City of Winnemucca*, 108 F.R.D. 61, 63 (D.Nev.1985) (certification improper when it would necessitate the court "to determine whether a person's... rights had actually been violated in order to determine whether that person was a class member"); *Dunn v. Midwest Buslines, Inc.*, 94 F.R.D. 170, 171–72 (E.D.Ark.1982) (class certification improper where it required "a finding of discrimination in order to define the class").

Because it would be impossible to definitively identify class members prior to individualized fact-finding and litigation, the proposed class fails one of the basic requirements for a class action under Rule 23 of the Federal Rules of Civil Procedure. *See*

8. Plaintiffs propose to identify some of the people who were in the entrance during the relevant time period through Dana's time and attendance records, coupled with their check-in sheets for vendors and visitors. Pls.' Reply at 3.

*Crosby v. Social Security Administration,* 796 F.2d 576, 579–80 (1st Cir.1986).

## B. Rule 23(a)

### 1. Numerosity

■ Under Rule 23(a), a party seeking class certification must demonstrate that the proposed class is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Courts have clarified this by holding that " 'impracticable does not mean impossible.' " *Gantz v. White,* No. CIV.A. 89–5096, 1989 WL 119116, at *1 (E.D.Pa. Oct. 6, 1989) (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7A Federal Practice and Procedure §§ 1762, at 159 (1986)). Furthermore, the exact number of class members need not be known for certification to be proper. *See Hurt v. Philadelphia Hous. Auth.,* 151 F.R.D. 555, 559 (E.D.Pa.1993) (citing *Nat'l Ass'n of Radiation Survivors v. Walters,* 111 F.R.D. 595 (N.D.Cal.1986)).

■ Assuming, arguendo, that Plaintiffs have stated a valid class, they estimate that approximately 300 people used the employee entrance at Dana during the relevant time period. Pls.' Mot. for Class Cert. at 5. They maintain that numerosity has been met when the number of potential individual plaintiffs poses a grave imposition on the resources of the court and a unnecessary burden on the litigants if forced to sue individually. *Id.* at 5–6. Defendants maintain that Plaintiffs have not offered any evidence aside from mere speculation that their class is so numerous as to make joinder impracticable, and therefore have not met their burden. Def. SGI's Opp. to Mot. at 29.

■ Rule 23(a)(1) does not require any particular number, so long as a good faith estimate of the number of class members is provided. *See In re Life USA Holding, Inc.,* 190 F.R.D. 359, 364 (E.D.Pa.2000). We have no reason to question the good faith estimate

provided and the numerosity requirement is consistently liberally construed. We find that the Plaintiffs have satisfied the numerosity requirement.

### 2. Commonality

■ The commonality requirement of Rule 23(a) requires that there exist questions of law or fact common to the members of the proposed class. Commonality exists when proposed class members challenge the same conduct of the defendants. *See, e.g., Califano v. Yamasaki,* 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. Because the requirement may be satisfied by a single common issue, it is easily met." *Baby Neal,* 43 F.3d at 56; *see also Alliance to End Repression,* 565 F.2d 975; *Yeager's Fuel v. Pennsylvania Power & Light Co.,* 162 F.R.D. 482, 486 (E.D.Pa.1995).

■ In the instant case, Plaintiffs have identified a number of issues they feel to be common to them and the putative class.[9] Certainly there are some questions in common between Plaintiffs and the proposed class, such as: whether Defendants have engaged or conspired to engage in audio surveillance of the proposed class and, if so, for what duration; and the physical layout of Dana's employee entrance.

Given the low threshold for this requirement, we conclude that Plaintiffs certainly share at least one question of law or fact with the prospective class, and therefore they have satisfied the commonality requirement of 23(a)(2).

### 3. The "Typicality" Requirement

■ Rule 23(a)(3) requires that the claims of the representative party be typical

---

9. Plaintiffs identify several common questions, including: (1) whether and for how long Defendants unlawfully intercepted oral communications at the heavy truck division; (2) whether and how many times Defendants disclosed intercepted oral communications; (3) whether and how many times Defendants used oral communications; (4) the existence and extent of the conspiratorial relationship among the defendants; (5) whether Defendants have committed prior or subsequent violations of the Wiretap Act; and (6) whether Defendants' actions and omissions have been sufficiently egregious to warrant the imposition of punitive damages, and if so, in what amount. Pls.' Mot. for Class Cert. at 8–9.

of the claims of the proposed class. FED. R. CIV. P. 23(a)(3). This requirement "effectively 'limits the class claims to those fairly encompassed by the named plaintiff's claims.'" *General Telephone Co. of Southwest,* 457 U.S. at 156, 102 S.Ct. 2364 (quoting *General Telephone Co. of Northwest v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)). Unlike the numerosity and commonality requirements, which evaluate the sufficiency of the class itself, the typicality requirement assesses the sufficiency of the named plaintiffs. *See Baby Neal,* 43 F.3d at 56.

The Third Circuit recently outlined the criteria a plaintiff must prove to satisfy 23(a)(3). The court concluded that "the typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interest will be fairly represented." *Id.* at 57. Essentially, the named plaintiffs' claims must be typical, "in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Id.* at 55. This requirement "preclude[s] certification of those cases where the legal theories of the named plaintiff potentially conflict with those of the absentees." *Id.*

▌ The typicality requirement may be met despite the existence of factual distinctions between the claims of the named plaintiffs and the claims of the proposed class. *Id.* at 58; *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985). Rather, a court's inquiry must involve "whether 'the named plaintiff's individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'" *Baby Neal* at 57–58 (citing *Hassine v. Jeffes,* 846 F.2d 169, 177 (3d Cir.1988)). If "the class representatives... present those common issues of law and fact that justify class treatment, thereby tending to assure that the absent class members will be adequately rep-

resented," then 23(a)(3) is satisfied. *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir.1992) (citation omitted). "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal,* 43 F.3d at 58 (internal quotation and citations omitted).

▌ We agree with Plaintiffs that their claims are based on the same legal theories as those of the proposed class: violation of the Wiretap Act, conspiracy to violate the Wiretap Act, and negligent supervision.[10] Pls.' Reply at 21. In addition, Plaintiffs do share factual elements with members of the putative class, since the alleged electronic surveillance all took place in the same physical location using the exact same method.

Defendants maintain that the Plaintiffs have not met the typicality requirement, relying heavily on *Forman v. Data Transfer,* which found that the typicality element had not been met where "proof of the Plaintiff's claims would not necessarily prove all the proposed class members' claims." *Forman,* 164 F.R.D. 400, 404 (E.D.Pa.1995). Def. SGI's Opp. to Mot. at 24–25. Defendants also argue that the defenses and pre-emptions possibly available to Dana may not be available against class members who are not union members or Dana employees. Def. Dana's Opp. to Mot. at 26. This objection is not sufficient to defeat typicality, as we could always modify or de-certify the class if this were to become an issue. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.,* 55 F.3d 768, 793 n. 14 (3d Cir.1995), *aff'd,* 134 F.3d 133 (3d Cir. 1998) ("Under Rule 23(c)(1), the court retains the authority to re-define or decertify the class until the entry of final judgment on the merits").

We find that Plaintiffs have met their burden of establishing typicality under Rule 23(a)(3).

### 4. Adequacy of Representation

Another class certification prerequisite is that the plaintiff "will fairly and adequately

---

**10.** Plaintiffs are also proceeding on a claim of invasion of privacy. They do not seek class certification for this claim, however. Pls.' Reply at 20.

protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Third Circuit has stated that this inquiry should determine whether the putative plaintiff "has the ability and incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Hassine*, 846 F.2d at 179 (citations omitted); *see also Hoxworth* 980 F.2d at 923 ("the plaintiff must not have interests antagonistic to those of the class"). The Supreme Court has repeatedly held that such persons "must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)). A named plaintiff cannot be an adequate class representative where he or she "has different claims and/or circumstances than other members, thereby creating the possibility of a less than vigorous advancement of the case for all plaintiffs involved." *Reilly*, 965 F.Supp. at 600.

 In the instant case, Plaintiffs seek the same remedy that other potential class members would seek. Plaintiffs' status as union members does not preclude them from adequately representing the interests of the class. Pls.' Reply at 23. If the Defendants' repeated assertion that the named Plaintiffs' claims are preempted by federal law[11] were found to be correct, we could always decertify the class. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d at 793 n. 14 ("Under Rule 23(c)(1), the court retains the authority to redefine or decertify the class until the entry of final judgment on the merits").

However, we have some misgivings about the named Plaintiffs' ability to represent the proposed class. Because of the individualized nature of the proof required to establish a violation of the Wiretap Act, their claims are based on circumstances not applicable to all proposed class members. Incentive may therefore be lacking to vigorously pursue the

case for all proposed class members. Yet, as there is no apparent lack of intent by Plaintiffs at this time to vigorously pursue the case for the rest of the putative class. Although it is a close decision, we will give Plaintiffs the benefit of the doubt, and find they have satisfied Rule 23(a)(4).

Plaintiffs' counsel has submitted an affidavit outlining both his and his firm's experience with a variety of class action litigations. See Roda Aff. ¶¶ 3–7. Rule 23(a)(4) requires that "the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation." *Hoxworth*, 980 F.2d at 923 (citations omitted); *see also Hassine*, 846 F.2d at 179. This requirement is meant to ensure appropriate representation of absent class members who will be bound by the judgment. *See Landy v. Amsterdam*, 96 F.R.D. 19 (E.D.Pa.1982). We find that Mr. Roda would be able to pursue the class action litigation if we were to certify a class.

## C. 23(b)

In addition to satisfying the 23(a) requirements, a putative class must comply with at least one of the sub-parts of Rule 23(b). *See Baby Neal v. Casey*, 43 F.3d 48, 55–56 (3d Cir.1994). Rule 23(b)(3) requires that "questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to the other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

 Satisfaction of the 23(a) commonality requirement, or any of the Rule 23(a) requirements, is not an indication that 23(b)(3) is likewise satisfied. *See, e.g., Amchem Products v. Windsor*, 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (the predominance inquiry is "far more demanding" than the commonality requirement of Rule 23(a), as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"); *Yeager's Fuel, Inc.*, 162 F.R.D. at 486 ("finding that... joinder is impracticable" is not inconsistent with a finding that plaintiff

---

**11.** Specifically, the Labor Management Relations Act. *See* 29 U.S.C. § 185(c).

"failed to demonstrate [superiority]"; this assertion "would effectively vitiate any meaningful distinction between the numerosity requirement and the superiority requirement"). After thorough review, we conclude that common issues do not predominate over individual issues in this case and that certifying the proposed class would not, as required, further economies of time, effort, and expense, or be otherwise superior to other methods of adjudication.

### 1. Predominance

■ A class action may be certified under Rule 23(b)(3) only if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FED R. CIV. P. 23(b)(3). Of course, the required predominance of common issues does not mean that individual issues must be non-existent; class members need not be identically situated as to all issues, so long as their claims are not in conflict with each other. Any individual differences, however, must be of lesser overall significance than the common issues, and they must be manageable in a single class action. *See Chin v. Chrysler Corp.*, 182 F.R.D. 448, 453 (D.N.J.1998) (citations omitted).

We conclude that because each member must prove liability and damages, individual issues will predominate over common issues of the litigation. Although certain factual issues in this case may be resolved on a common basis, possibly many more require individual examination. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 455 (3d Cir. 1977), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). Furthermore, the need to establish liability and damages with respect to each class member would require a detailed factual inquiry to establish the circumstances and surroundings of each class member. This would place a strain on the resources of this Court, and would defeat the expected efficiencies of proceeding as a class. We will not certify a class that will result in a laborious administrative process, where individual threshold questions will ov-

ershadow common issues regarding Defendants' alleged conduct. Accordingly, we conclude that Plaintiff has not adequately shown that common issues predominate over individual issues.

The court in *Forman* faced a situation analogous to the case before us; their approach is applicable here. In that case, the defendant allegedly sent unsolicited facsimile advertisements to plaintiff and others that plaintiff wanted to represent as a class. *Forman*, 164 F.R.D. at 402. The essence of plaintiff's complaint was that defendant had violated the Telephone Consumer Protection Act of 1991.[12] *Id.* Plaintiff sought to certify a class comprising of people and businesses that had received the unsolicited facsimiles starting on a particular date. *Id.* The court refused, noting that:

> In determining whether common questions of law and fact predominate, the focus of the inquiry is directed primarily toward the issue of liability. The gravamen of plaintiff's complaint is not a common course of conduct by the defendant, but rather a series of individual transmissions under individual circumstances, each of which is an alleged violation of the statute. Lacking a single set of operative facts, it is difficult to see how common questions . . . predominate.

*Id.* at 404.

Like the plaintiff in *Forman*, Plaintiffs in this case maintain that Defendants engaged in a common course of conduct to violate the Wiretap Act. They assert that the alleged constant audio surveillance is a common question to all, as are questions relating to their claims of conspiracy and negligent supervision. However, the complaint is based upon allegations of individual violations, each of which turns on individual circumstances. Without an objectively reasonable expectation of privacy, conversations made by a particular class member will not be protected oral communications under the Act.

Furthermore, the Wiretap Act calls for a minimum $1000 recovery, or $100 for each day the Act was violated if the total is more

---

**12.** 47 U.S.C. 227(b)(1)(C). This statute prohibits, inter alia, using a facsimile machine to send an unsolicited advertisement to another facsimile machine.

than $1000.[13] Assuming at least one violation, we would need to determine how many days Defendants violated the Wiretap Act for each class member to calculate statutory damages. Possible punitive damages would also necessitate individual inquiries. Of course, "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 137 (3rd Cir.2000) (citations omitted). However, because common issues on liability do not predominate, the necessity of an individual calculation of damages is yet another factor which militates against granting class certification.

Defendant's affirmative defenses present more issues to be decided on an individual basis. These defenses include: preemption by the Labor Management Relations Act, failure to exhaust remedies under collective bargaining agreement, failure to seek relief before the National Labor Relations Board, and bar by the Pennsylvania Workers' Compensation statute. Def. Dana's Reply at 44–46; Def. SGI's Reply at 27–30. Most of these defenses will have to be determined according to each individual plaintiff, as many of them hinge on facts specific to each class member.[14] *See, e.g., Barnes v. American Tobacco Co.*, 161 F.3d 127, 149, *cert. denied*, 526 U.S. 1114, 119 S.Ct. 1760, 143 L.Ed.2d 791 (1999); *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 342 (4th Cir.1998); *Arch v. Am. Tobacco Co.*, 175 F.R.D. 469, 491 (E.D.Pa.1997) (certification was not warranted, as individualized inquiries would be required into members' addictions and causation, product defect, and affirmative actions).

To establish liability in the case sub judice, we would need to consider the relevant facts and circumstances surrounding each putative class member for each alleged oral communication that took place in Room 235 during the first week of April 1994. It is clear that

whatever common peripheral issues that exist are dwarfed by the individual inquiries necessary to establish liability.

In a case where no one set of operative facts establishes liability and where individual issues outnumber common issues, the district court should question the appropriateness of a class action for resolving the controversy. As our above discussion makes clear, numerous individual issues present an impediment to proceeding as a class action and offset the potential benefits of such an action. When individual rather than common issues predominate, "the economy and efficiency intended by class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 (1986). On this issue of predominance alone, we would deny Plaintiffs' Motion for Class Certification.

*2. Superiority*

Rule 23(b)(3) also requires that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* The Rule lists several factors pertinent to this question:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R. CIV. P. 23(b)(3).

A finding of predominance is not an indication that the superiority requirement will be satisfied; however, frequently a finding that individual issues do not predominate

---

13. *See* 18 PA. CONS. STAT. ANN. § 5725(a)(1).

14. This is particularly so because both named Plaintiffs are members of a union as well as employees of Dana. Plaintiffs propose to represent class members who are neither union members nor employees of Dana, making individual inquiries into Defendants' affirmative defenses likely.

is accompanied by a finding that a class action is not superior. See *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 224 (citing *Castano v. American Tobacco Co.*, 84 F.3d 734, 745 n. 19 (5th Cir.1996)); *see also* FED. R. CIV. P. 23(b)(3), Advisory Note. We conclude that even if Plaintiffs could have satisfied the predominance requirement, their class certification motion would fail the superiority requirement.

To find superiority, a court must find all other methods of resolving the issues in a case to be inferior to a class action. Plaintiffs acknowledge that their attorneys can recover fees and costs in a successful Wiretap Act claim, yet argue that because there is no guarantee of success there is little incentive for an individual plaintiff to pursue litigation under the Wiretap Act. Pls.' Reply at 26. However, the very purpose of a fee-shifting statute such as the one at issue here is to provide incentive to counsel to pursue otherwise unprofitable litigation. 18 PA CONS. STAT. ANN. § 5725(a)(3); *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 275 (7th Cir.1996). Plaintiffs further concede that punitive damages are available when a successful claim is made under the Wiretap Act, providing an incentive for individual plaintiffs to pursue claims that might otherwise be neglected. *Id.* The ability to recover attorneys' fees or punitive damages belies the projected problems of a negative value suit, and offsets the potential costs associated with individual litigations for relatively small financial amounts. *See, e.g., Arch*, 175 F.R.D. at 496. Additionally, it is a non sequitur to state that no guarantee of success means that an individual has little incentive to pursue litigation under the Wiretap Act, for, as Defendants note, Plaintiffs are no more likely to prevail in a class action than they would be in individually-joined litigation. Def. Dana's Sur–Reply at 10.

Finally, we note the finding of some courts that a class action is not superior when it would result in relatively small recoveries for individual class members while either exposing defendants to large administrative costs or consuming judicial resources, on top of the necessary abundance of court time for supervision. *See Parker v. George Thompson*

*Ford, Inc.*, 83 F.R.D. 378 (N.D.Ga.1979); *John Does 1–100 v. Boyd*, 613 F.Supp. 1514 (D.Minn.1985).

Courts are hesitant to certify a class where "determining a *membership* in the class would essentially require a mini-hearing on the merits of each case." *Forman v. Data Transfer*, 164 F.R.D. 400, 403 (E.D.Pa.1995)(emphasis added); *see also Dunn*, 94 F.R.D. at 171–72. If certified as presently proposed, this case would quickly devolve into an a quagmire of divergent legal and factual issues. *See* FED. R. CIV. P. 23(b)(3) (noting that a court evaluating the superiority class action device should consider "the difficulties likely to be encountered in the management" of the class action). Such divergent issues are sufficiently numerous to negate any efficiencies brought on by the use of the class action device in this case.

We conclude that the economy to be achieved by class treatment of the issues is more than counterbalanced by the numerous issues relevant only to a particular class member. The few issues that might be tried on a class basis in this case, balanced against those that must be approached individually, establish that the time saved by the class action procedure would likely be relatively insignificant.

In sum, a 23(b)(3) class action in this case would be unwieldy and run counter to the expected benefits of a class action. A trial would require resolution of numerous factual and legal issues. The decision to deny certification in this case necessarily involves the exercise of some discretion, as a district court must be able to avoid creation of a large and unwieldy class, where it is not necessary to protect the plaintiffs' rights. *See Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336 (10th Cir.1973). Because the Plaintiffs have been unable to demonstrate the superiority of a class action, we decline to certify the proposed class.

### III. CONCLUSION

Plaintiffs have failed to satisfy the requirements of Federal Rule of Civil Procedure 23, because the proposed class definition is not valid, because common issues do not predominate over the individual issues raised by this

litigation, and because a class action would not be a superior mechanism for adjudicating the claims at issue. The administrative burdens that would present themselves render the proposed class action infeasible.

For the foregoing reasons, we deny Plaintiffs' Motion for Class Certification.